WALTER M. WEIL AND ADELE D. WEIL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40613. Filed November 30, 1954.

*M. E. Newcomer, Esq.*, for the petitioners.
*James A. Scott, Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* All of the facts were stipulated by the parties and are incorporated herein by reference.

Petitioners filed a joint income tax return for the calendar year 1948 with the then collector of internal revenue at Cleveland, Ohio. Dur-

---

ing that year, petitioners realized gain of $1,470,328.84 upon the sale or exchange of capital assets of which 50 per centum, or $735,164.42, constitutes net long-term capital gain pursuant to the provisions of section 117 (a) and (b), Internal Revenue Code of 1939. Also during that year they realized an adjusted gross income, exclusive of capital gain, in the amount of $50,753.61. Their total deductions allowable under section 23 of the 1939 Code for that year were $114,269.63, and their credits against net income for exemptions were $1,200. This proceeding involves the proper computation of their income tax liability under the alternative tax provisions of section 117 (c) (2) then in effect.

For the purpose of facilitating our discussion of the issue involved in the instant case, the term "taxable capital gain" is used throughout to mean both net long-term capital gain and the excess of net long-term capital gain over net short-term capital loss, that is, 50 per centum of the total gain mentioned above. We shall also use the term "ordinary income" throughout this opinion to mean adjusted gross income reduced by the amount of taxable capital gain.

The provisions of section 117 (c) (2), in effect in 1948, state as follows:

If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, there shall be levied, collected, and paid, in lieu of the tax imposed by sections 11 and 12, a tax determined as follows, if and only if such tax is less than the tax imposed by such sections:

A partial tax shall first be computed upon the net income reduced by the amount of such excess [the taxable capital gain, in the instant case], at the rates and in the same manner as if this subsection had not been enacted, and the total tax shall be the partial tax plus 50 per centum of such excess.

Respondent determined that petitioners' net income was their ordinary income ($50,753.61) plus their taxable capital gain ($735,164.42) less their deductions ($114,269.63), or $671,648.40. He computed their "partial tax" under the alternative tax computation to be zero since the net income "reduced" by the amount of the taxable capital gain resulted in a negative figure upon which no tax could be calculated. He thus determined that petitioners' total alternative tax was 50 per cent of their taxable capital gain, or $367,582.21.

Petitioners, on the other hand, contend that respondent's determination of the alternative tax results, in effect, in a disallowance of otherwise authorized deductions and credits in instances such as this one where net income is less than taxable capital gain. They urge instead that the 50 per cent rate be applied to the taxable capital gain only to the extent that such gain does not exceed the taxable income figure (net income less credits for exemption) upon which the tax liability is determined under the regular, as distinguished from the alterna-

tive, method of computation. In the instant case, the net income ($671,648.40, as stipulated by the parties) less petitioners' $1,200 credit against net income for exemptions results in a taxable income of $670,448.40. Petitioners contend that the total alternative tax is 50 per cent of this figure, or $335,224.20.

The issue presented in the instant case is one of first impression. In the usual situation where ordinary income exceeds deductions and credits, the issue does not arise. In calculating the alternative tax, a partial tax is first computed upon the net income reduced by the amount of the taxable capital gain. This reduced net income in effect consists of the ordinary income less the deductions. After credits against net income for exemptions are subtracted from this figure, the partial tax is determined according to the regular tax rate schedule. Since full tax benefit has thus been accorded the deductions and credits in the computation of the partial tax, it is clear that the capital gain portion of the alternative tax is 50 per cent of the taxable capital gain.

The instant case, however, involves the unusual situation where ordinary income is less than deductions and credits, or where, in a manner of speaking, there is a deficit in ordinary income. Under these circumstances, net income (which is ordinary income plus taxable capital gain less deductions) is less than the taxable capital gain. In calculating the alternative tax, the partial tax amounts to zero, for the net income reduced by the taxable capital gain (a larger amount) is a negative number due to the deficit in ordinary income. The taxpayer in this situation therefore does not get a tax benefit for his entire deductions or credits in the computation of the partial tax. The issue thus arises as to whether or not the unused deductions (i. e., the deficit in ordinary income) and credits may be deducted from the taxable capital gain in computing the capital gain portion of the alternative tax. It is our view for the reasons expressed below that taxable capital gain is not to be reduced by the amount of unused deductions and credits in computing the alternative tax.

At the outset, we wish to point out that we are concerned only with the alternative tax computation. Were petitioners' tax determined pursuant to the ordinary method, full allowance would be given to the deductions and credits, for the tax rates provided in sections 11 and 12 of the 1939 Code would be imposed upon a taxable income figure composed of net income (the sum of petitioners' ordinary income and taxable capital gain less their deductions) less their credits against net income for exemptions. Section 117 (c) (2), however, requires that the alternative tax be imposed "if and only if" such tax is less than the tax imposed by sections 11 and 12. In the instant case, the alterna-

tive tax is less under both petitioners' and respondent's computations and it accordingly must be imposed under either view.

A brief history of the tax treatment of capital gains will enable us to view the present controversy in its proper perspective. Prior to the Revenue Act of 1921, capital gains were taxed in full in the year realized. Because taxpayers were reluctant to make sales or exchanges which would result in large capital gains taxed in 1 year at high progressive tax rates, the 1921 Act enacted the first alternative tax treatment of capital gains "in order to permit such transactions to go forward without fear of a prohibitive tax." See H. Rept. No. 350, p. 10 and S. Rept. No. 275, p. 12, 67th Cong., 1st Sess., reported in 1939–1 C. B. (Part 2) at pp. 168, 176 and 181, 189. Section 206 (b) of that Act provided that the alternative tax shall be imposed at the election of the taxpayer and shall be determined by a partial tax at regular progressive rates imposed upon the "ordinary net income" plus 12½ per cent of the "capital net gain," but that the total tax shall not be less than 12½ per cent of the total net income.

The Revenue Act of 1924 reenacted the alternative tax principle of the earlier law but the minimum tax provision (12½ per cent of the total net income, *supra*) was omitted. Section 208 (a) (5) of the 1924 Act also amended the definition of "capital net gain," which under the 1921 Act meant the excess of the total amount of capital gain over the sum of the capital deductions and capital losses, to read as follows:

The term "capital net gain" means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gain.

The purpose of this revision (i. e., adding (B)) to the definition of capital net gain was to provide expressly for a situation similar to the one in the instant case. In this respect, House Report No. 179, 68th Congress, 1st Session, states as follows at page 19 (reported in 1939–1 C. B. (Part 2) 241, 255):

Under the existing law the tax under the capital gain section is the tax on the ordinary net income plus 12½ per cent of the capital gain. If the taxpayer has no ordinary net income but has a deficit, the tax under the existing law is still 12½ per cent of the capital gain, *although the capital gain may thus be in excess of the net income of the taxpayer*. In the bill paragraph (4) is inserted, and the two succeeding paragraphs are changed in order to revise the definition of capital net gain so that the tax in cases where there is a deficit in ordinary income will be 12½ per cent of an amount determined by subtracting from the capital net gain the amount of the deficit in ordinary net income. This provision is in the interest of the taxpayer. [Emphasis supplied.]

The identical provision was reenacted by section 208 (a) (5) of the 1926 Act, and by section 101 (c) (5) of the 1928 and 1932 Acts. The Revenue Act of 1934, however, departed from the use of an alternative

tax with respect to capital gain. Section 117 (a) of that Act provided instead that certain percentages (ranging from 100 per cent, if the capital asset had been held for not more than 1 year, to 30 per cent if held for more than 10 years) of the gain or loss recognized upon the sale or exchange of a capital asset "shall be taken into account in computing net income." Since the 1934 Act was the first to introduce the concept of percentage of gain or loss "taken into account in computing net income" and because this phrase is important to the petitioners' contentions discussed *infra*, we wish at this point to emphasize the meaning placed upon the phrase by the legislators who enacted it.

We believe that Congress meant by the phrase that the prescribed percentages of gain were to be included in gross income from which deductions were subtracted in calculating net income; in other words, that the taxable portions of capital gain were to be "taken into account in computing net income" by way of inclusion in gross income. Such a meaning is consistent with the scheme of our tax system which is to include in gross income all income of every sort, including capital gains, and to authorize certain deductions from that gross income in order to arrive at net income which is the base for tax calculations. We find nothing in the legislative history of the 1934 Act to indicate that Congress intended to depart from this scheme by including the prescribed percentages of gain directly in net income; that is, by adding such gain to ordinary income reduced by allowable deductions. On the contrary, House Report No. 704, 73d Congress, 2d Session, at page 31 (reported in 1939–1 C. B. (Part 2) 554, 578) indicates that no such interpretation of the phrase was intended. The report, after setting forth an example in which the total "gain taken into account under sec. 117" is $7,600 and the total "loss taken into account under sec. 117" is $4,400, states in part as follows:

In the above case, the taxpayer would include in *gross income* subject to tax $7,600 in gains and be allowed to deduct $4,400 of losses. The net increase in his income will, therefore, be $3,200. * * * [Emphasis added.]

We believe it is clear that under the 1934 Act (and the 1936 Act which reenacted the above provisions) the appropriate percentages of capital gain were treated as parts of gross income from which deductions were subtracted in determining net income. After credits against net income were allowed, the tax was determined according to the regular progressive rates. Under this method of computation, if deductions exceeded ordinary income, the excess deductions were effective to reduce that portion of the capital gain which was taken into account in determining gross income. Thus, the issue involved in the instant case would not have arisen under the 1934 or 1936 Act.

The 1938 Revenue Act combined the percentage concept of the then existing law with the alternative tax principles of the revenue acts in

effect prior to the 1934 Act. Except for changes immaterial to the issue in the instant case, the provisions of the 1938 Act and the 1939 Code in effect for 1948 are substantially the same. Compare sections 117 (b) and 117 (c) (1) of the 1938 Act with sections 117 (b) and 117 (c) (2) of the 1939 Code as amended. The effect of section 117 of the 1938 Act, as intended by the Congress which first enacted it, was to place an upper limit on the amount of tax levied upon capital gain. See S. Rept. No. 1567, 75th Cong., at p. 20, reported in 1939-1 C. B. (Part 2) 779, 794. The 1938 Act thus provided that the taxable portion of such gain is either added to the taxpayer's other gross income and taxed in the regular manner at the prescribed rate, or taxed separately at a flat rate, according to which method produces the lesser tax.

Section 117 (a) (4) of the 1939 Code (and the like section of the 1938 Act) defines "long-term capital gain" as follows:

The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than six months [18 in the 1938 Act], *if and to the extent such gain is taken into account in computing net income.* [Emphasis supplied.]

Such a definition is necessitated by section 117 (b) of the 1939 Code which provides that certain percentages of gain or loss, depending upon the holding period, "shall be taken into account in computing net capital gain, net capital loss, and net income." This section was derived from the corresponding provision of the 1934 and 1936 Acts, *supra,* and we find no difficulty in holding that the meanings are similar; to wit, that the taxable percentage of capital gain is included in gross income and in this way "taken into account" in computing net income. See sec. 21 of the 1939 Code and Regs. 111, sec. 29.21-1. Accordingly, when the tax is computed in the regular manner (as distinguished from the alternative method), if deductions exceed ordinary income, the excess deductions will be effective to reduce that portion of the capital gain which is included in gross income, as was the case under the 1934 and 1936 Acts, *supra.* Petitioners agree that this method of computation is correct.

The Code provision which authorizes the alternative tax, however, differs from the corresponding provision of the revenue act from which it was derived. Section 208 (b) of the 1924 Act provided that the alternative tax was the partial tax (computed upon the basis of ordinary net income) plus 12½ per cent of the "capital net gain." Capital net gain, by definition, *supra,* was capital gain less "the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gain." Section 117 (c) (2) of the 1939 Code, on the other hand, states in part that the total alternative tax shall be determined as follows:

A partial tax shall first be computed upon the net income reduced by the amount of *such excess*, at the rates and in the manner as if this subsection had not been enacted, and the total tax shall be the partial tax plus 50 per centum of *such excess*. [Emphasis supplied.]

The term "such excess" refers to the excess of net long-term capital gain over short-term capital loss, or what we refer to as taxable capital gain in the instant case. Unlike the similar provision in the 1924 Act, the definitions in the Code of the terms which constitute "such excess" do not expressly authorize reducing the taxable capital gain by the amount, if any, by which deductions exceed ordinary income. See secs. 117 (a) (2), (3), (4), (5), (7), and (8) of the 1939 Code.

Petitioners, however, contend that the amount of "such excess" is limited by the amount of net income. They argue, first, that, in computing the partial tax portion of the alternative tax, net income is "reduced by the amount of such excess"; that, if that excess is larger than net income (as it will be in cases such as the instant one where deductions exceed the ordinary income), the net income will be reduced below zero; that Congress did not intend such a negative result; and that therefore "such excess" may not exceed net income. Petitioners then conclude that, since the taxable capital gain may not exceed net income for computation of the partial tax, the same reduced figure must be used in computing the capital gain portion of the alternative tax which is also imposed upon "such excess."

We do not agree with petitioners' reasoning. Although for purposes of computing the partial tax the reduction of net income below zero is meaningless, it does not necessarily follow that the amount of "such excess" (i. e., the taxable capital gain) is limited by the size of the net income for the computation of the alternative tax. The parties agree that the partial tax is zero in the instant case. It is therefore immaterial in the computation of the partial tax whether net income is reduced by an amount equal to or greater than itself. In the computation of the capital gain portion of the alternative tax, however, the term "such excess" must be given the meaning expressly set out in the statutory plan for taxing capital gain.

Under the plan provided for in the Code, if net long-term capital gain exceeds net short-term capital loss, this excess of gain is considered in computing the regular tax as well as the alternative tax, the lower of the two taxes being the one imposed. In determining the regular tax, the excess of gain is entirely included in gross income from which deductions are subtracted in computing net income upon which, after allowing credits, the tax is imposed. The alternative tax computation also pertains to the same excess, for the Code provides that the alternative tax "shall be the partial tax plus 50 per centum of such excess." We thus believe that Congress intended that the 50 per cent rate be applied to the same amount in computing the

capital gain portion of the alternative tax as was included in gross income in computing the regular tax. This express language of the statute carries out the intention of the framers of the 1938 Act, *supra*, that a flat rate of tax on taxable capital gain be an alternative to the tax imposed upon such gain when it is included in gross income and taxed in the regular manner. Petitioners have not pointed out, and we are unable to find, anything in the language of the Code to indicate that Congress intended to include one amount in gross income for the regular tax computation but to apply the flat 50 per cent rate to some other amount under the alternative tax.

Petitioners contend in this respect, however, that, since the items of gain and loss which constitute the term "such excess" in section 117 (c) (2) of the 1939 Code are each limited in amount by definition to that "taken into account in computing net income" (see secs. 117 (a) (2) through (8)), only the amount of taxable capital gain which is actually included in net income is subject to the capital gain portion of the alternative tax. We do not agree with this interpretation. As we stated above, the definitions of long-term and short-term capital gains and losses are modified by the phrase upon which petitioners rely because of section 117 (b) which sets forth the percentages of gain or loss to be "taken into account in computing * * * net income." These percentages of gain are not added directly to net income, as petitioners' interpretation would require, but are taken into account in computing net income by including them in the computation of gross income.[1]

Moreover, were petitioners' interpretation (that "taken into account in computing" means *added directly into* net income) applied consistently in both 117 (b) and section 117 (a), the result would still not be favorable to them. Under such an interpretation, section 117 (b) would provide in effect that 50 per cent of long-term capital gain shall be included directly in the net income figure determined after deductions have been subtracted from ordinary income. Therefore, if deductions exceed ordinary income, such excess deductions would not be effective to reduce the taxable capital gain under either the regular method of computing the tax or the alternative method. Under the regular method of computation, the taxable capital gain would be

---

[1] It should be noted that sections 322 (c) (2) and (d), Revenue Act of 1951, amended section 117 of the 1939 Code with respect to taxable years beginning on or after October 20, 1951. The amendment, among other changes, eliminated the "percentage taken into account" provision of section 117 (b) and provided instead for a deduction from gross income of 50 per cent of the excess of net long-term capital gain over net short-term capital loss. Sections 117 (a) (2) and (4) were also amended to limit both short-term and long-term capital gain to the "extent such gain is taken into account in computing *gross income.*" (Emphasis supplied.) Petitioners concede in their reply brief that under these amended provisions, an alternative tax computation on the facts of the instant case would "probably" result in the tax determined by respondent. For similar provisions, see sections 1201, 1202, and 1222, Internal Revenue Code of 1954.

added directly to net income (which would be zero since deductions exceed the ordinary income) and the tax would be determined upon the taxable capital gain unreduced by the excess deductions. The result under the alternative method would be the same as determined by respondent in the instant case, for the unreduced taxable capital gain would have been included in net income which is what petitioners contend is taxable at the 50 per cent rate. Thus, their own interpretation of the statute (which we do not adopt) fails to support petitioners' computation of the alternative tax.

Petitioners also argue that respondent's determination deprives them of the tax benefit of a large part of their charitable contributions during the taxable year in question. During 1948, petitioners made charitable contributions in the total amount of $111,394.50. This amount was within the limitation of 15 per cent of petitioners' adjusted gross income (including taxable capital gain) provided by section 23 (o) of the 1939 Code then in effect. Accordingly, under the regular method of computing the tax, the total amount of contributions is deducted in determining net income. Unless, however, the excess of deductions over ordinary income is subtracted from the taxable capital gain in determining the capital gain portion of the alternative tax, a large part of the total contributions will be ineffective in determining the tax under the alternative method.

We agree with petitioners that respondent's determination renders ineffective a part of their charitable contributions. We repeat, however, that the alternative tax is imposed only if it is less than the tax computed under the regular method which permits deduction of the total contributions in the instant case. The alternative tax, based on the flat rate of 50 per cent of the taxable capital gain, however, is more favorable to petitioners and is therefore imposed. Thus, the ineffectiveness of deductions occurs only under an alternative tax computation which is favorable to the petitioners.

*Helvering* v. *Bliss*, 293 U. S. 144 (1934), and *Helvering* v. *Strauss*, (C. A., D. C., 1934) 74 F. 2d 470, affirming 27 B. T. A. 1116, cited by petitioners, are not pertinent to the above issue. Both cases arose under the Revenue Act of 1928 which, like the 1924 Act, *supra*, reduced the capital gain by the amount of the excess deductions in determining the capital gain portion of the alternative tax. Furthermore, the issue in those cases involved the interpretation of the term "net income," for charitable contributions were then limited to "15 per centum of the taxpayer's net income as computed without the benefit of this section." It was there held that "net income" included both ordinary income and capital gains for calculating the allowable charitable deduction. See also I. T. 3345, 1940–1 C. B. 54. The 1939 Code in effect in 1948, however, provided that the limitation was 15

per cent of "adjusted gross income," so the issue involved in the two cited cases is not here pertinent.

In addition to their contention that the excess deductions should be subtracted from the taxable capital gain in determining the capital gain portion of the alternative tax, petitioners contend that their credits against net income for exemptions ($1,200) should also be so subtracted. We find no support in the statute for such contention. Credits are subtracted from net income in determining a figure upon which the tax is imposed under sections 11 and 12 of the 1939 Code. Thus, the amount of net income is independent of any credits, and petitioners' contention that taxable capital gain is limited in amount to net income is inapplicable. We may add that we do not find any support for petitioners' contention in this respect even in the 1924 Act. That Act, which provided for reducing the amount of capital gain by unused deductions in computing the capital gain portion of the alternative tax, did not expressly so provide for unused credits. See secs. 208 (a) (5), 210, and 216, Revenue Act of 1924.

Since it is our view that the capital gain portion of the alternative tax under the 1939 Code is a flat rate of tax upon the taxable capital gain, we hold that such gain shall be unreduced by the amount of unused credits.

Other adjustments determined by respondent in the amount of petitioners' 1948 income taxes were conceded.

Reviewed by the Court.

*Decision will be entered for the respondent.*