ELLSWORTH M. STATLER TRUST OF JANUARY 1, 1920, FOR ELLSWORTH MORGAN STATLER, KATHERINE M. ZELLER, FRANK C. MOORE AND THE MARINE TRUST COMPANY OF WESTERN NEW YORK, TRUSTEES, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 89788–89790. Filed November 23, 1964.

---

[1] Proceedings of the following petitioners are consolidated herewith: Ellsworth M. Statler Trust of Jan. 1, 1920, for Marian F. Statler, Ellsworth M. Statler portion, Katherine M. Zeller, Frank C. Moore and The Marine Trust Co. of Western New York, Trustees, docket No. 89789; and Ellsworth M. Statler Trust of Jan. 1, 1920, for Marian F. Statler, Milton Howland Statler portion, Katherine M. Zeller, Frank C. Moore and The Marine Trust Co. of Western New York, Trustees, docket No. 89790.

*Daniel G. Yorkey*, for the petitioners.
*Philip Shurman*, for the respondent.

OPINION

WITHEY, *Judge:* The Commissioner has determined deficiencies in the income tax of the petitioners for 1954 as follows:

| Name | Docket No. | Deficiency |
|------|------------|------------|
| Ellsworth M. Statler Trust of Jan. 1, 1920, for Ellsworth Morgan Statler, etc. | 89788 | $39,283.21 |
| Ellsworth M. Statler Trust of Jan. 1, 1920, for Marian F. Statler, Ellsworth M. Statler Portion, etc. | 89789 | 26,188.77 |
| Ellsworth M. Statler Trust of Jan. 1, 1920, for Marian F. Statler, Milton Howland Statler Portion, etc. | 89790 | 26,188.95 |

The single issue presented in each proceeding is the correctness of the respondent's action in determining that under the alternative method of income tax computation provided in section 1201(b) of the Internal Revenue Code of 1954 where deductions (apart from deductions of amounts set aside for charity) were sufficient to offset ordinary income the 25-percent tax rate is to be applied to the entire amount of taxable net long-term capital gain and that such capital gain is not to be reduced by an amount set aside for charitable purposes.

The facts have been stipulated and are found accordingly.

The petitioners are separate trusts established under a trust agreement made January 1, 1920, by Ellsworth M. Statler, sometimes hereinafter referred to as the trust agreement. Katherine M. Zeller, Frank C. Moore, and the Marine Trust Co. of Western New York, a New York banking corporation, are the currently qualified and acting trustees under the trust agreement and administer the trusts at the office of the corporate trustee in Buffalo, N.Y.

The trust agreement was made in New York and is governed in all respects by the law of New York. During 1954 the trusts had no income beneficiaries who were infants and all of the trust income in each case was currently distributable.

The petitioners report their income for Federal income tax purposes on the calendar year and the cash receipts basis. The Federal income tax return for 1954 was, in each case, filed with the district director for the district of Buffalo, N.Y., on or about March 15, 1955.

The above-mentioned trust agreement of January 1, 1920, provided in part as follows:

1. Out of the net income arising from the trust estate, the trustee shall from time to time make such charitable, educational, religious and philanthropic gifts and donations as in their discretion may be proper, not less in the aggregate, however, than fifteen per cent (15%), and not exceeding thirty per cent (30%)

of the total net income in each year, with power to combine said gifts or donations with other similar gifts or donations from the other trusts created by this indenture and from Ellsworth M. Statler Grantor, personally, or from his estate, and present the aggregate gifts or donations to any given cause or institution in the name of "The Statlers." The particular objects and purposes for which such gifts and donations shall be expended, shall be determined from time to time by a majority vote of the Trustees hereunder and the children of the Grantor hereinbefore named, and any other child or children whom the Grantor may hereafter have or adopt, provided, however, that no child of the Grantor shall have any vote until he or she shall have attained the age of 21 years. The decision so made shall govern each of the four trusts created hereunder. The children however, shall have no voice in determining what percentage of the total net income of each trust shall be so expended, that determination being vested exclusively in the Trustees or a majority of them, but the children shall have a vote in determining the manner and amounts of the division of the aggregate sums so appropriated. Beneficiary or other gifts or aid to employees of Hotels Statler Company, Inc. or any successor or affiliated corporation, shall be deemed charitable gifts within the meaning of this provision.

During 1954 the petitioner in docket No. 89788 was the owner of 73,088 shares of the common stock of Hotels Statler Co., Inc., a New York corporation, sometimes hereinafter referred to as Statler. Of the 73,088, 72,000 were held in "Original Principal" and 1,088 were held in "Other Principal." During 1954 the petitioner in docket No. 89789 owned 48,000 shares of Statler stock, and the petitioner in docket No. 89790 also owned 48,000 shares of Statler stock. The petitioners and certain other Statler stockholders by an agreement made on August 2, 1954, sometimes hereinafter referred to as the stock sale agreement, with Hilton Hotels Corp., a Delaware corporation, sometimes hereinafter referred to as Hilton, agreed to and thereafter did sell all of their Statler stock to Hilton.

By an agreement made October 7, 1954, sometimes hereinafter referred to as the asset sale agreement, Statler agreed with Hilton and with Statler Hotels Delaware Corp., a Delaware corporation, sometimes hereinafter referred to as New Statler, to sell all of Statler's assets to Hilton and to New Statler, subject to Statler's liabilities, at a price sufficient to yield Statler's stockholders about $50 per share net, upon liquidation of Statler.

Toward the end of October 1954, the stock sale agreement and the asset sale agreement were closed approximately simultaneously. Upon the closing Hilton paid petitioners and the other Statler stockholders, who were parties to the stock sale agreement, $50.13 a share for their Statler stock. Hilton, upon the closing of the asset sale agreement and the liquidation of Statler, received about $50 per share for the Statler stock which it had acquired under the stock sale agreement. At the time of the sale of the petitioners' stock to Hilton, the stock was a capital asset in the hands of the petitioners which had

been held for more than 6 months and the petitioners realized long-term capital gain on the sale thereof.

Under the law of New York, upon the liquidation of a corporation having a trust as a stockholder, that part of the trust's portion of the liquidation distributions representing corporate earnings accumulated since the date of the creation of the trust is distributable as income to the income beneficiaries of the trust.

Claim was accordingly made in 1954 by the income beneficiaries of petitioners that the proceeds received by petitioners from their Statler stock were received, in effect, upon the liquidation of Statler, and that a portion of such proceeds was distributable as income. A written compromise agreement was executed by the parties on November 9, 1955, and approved by the Supreme Court, Erie County, N.Y., on December 21, 1955.

Following court approval of the compromise agreement there were allocated from the proceeds of sale of the petitioners' Statler stock to income of the respective petitioners to be paid over as income by the trustees, amounts computed at the rate of $15.50 per share, 15 percent of which (after certain deductions) was payable by the trustees for charitable, educational, religious, and philanthropic gifts and donations in accordance with paragraph 1 of the trust agreement. On December 30, 1955, the trustees of the petitioners made payment of the foregoing charitable gifts and donations.

In their Federal income tax returns for 1954: (1) The petitioner in docket No. 89788 reported long-term capital gain of $3,387,986.08 on the sale of 72,000 shares of Statler stock held in "Original Principal," but reduced this gain by $157,132.81 as an amount set aside for charitable purposes; (2) the petitioner in docket No. 89789 reported long-term capital gain of $2,258,655.30 on the sale of 48,000 shares of Statler stock, but reduced the gain by $104,755.11 as an amount set aside for charitable purposes; and (3) the petitioner in docket No. 89790 reported long-term capital gain of $2,258,670.34 on the sale of 48,000 shares of Statler stock, but reduced the gain by $104,755.80 as an amount set aside for charitable purposes. The petitioner, in each instance, computed capital gains tax at the alternative rate, and, in each instance, ordinary deductions (apart from deductions of amounts set aside for charity) were sufficient to offset ordinary income (other than long-term capital gains).

Attached to the return of the petitioner in docket No. 89788 was a schedule containing the following statement:

On October 29, 1954, 72,000 shares of common stock of Hotels Statler Company, Inc. held in this trust were sold to Hilton Hotels Corporation. Net long-term gain on the sale (after expense of sale) was $3,387,986.08. An accounting proceeding is now pending in Supreme Court, Erie County, in which it is anticipated that the Court will approve payment to the income beneficiaries of the trust of an amount of the proceeds equivalent to $15.50 per share less adjustments, as

distributable to them for accounting purposes. Of this amount 15%, or $157,132.81, is distributable to charitable beneficiaries under the terms of the trust instrument. As payment to income beneficiaries will be made only when the decree in the accounting proceeding has been rendered, the Trustee is reporting in this return and paying tax on $3,230,853.27, which is the total net long-term gain of $3,387,986.08 less $157,132.81 distributable to charitable beneficiaries.

Like schedules, differing in amounts involved, were attached to the returns of the petitioners in docket Nos. 89789 and 89790.

In determining the deficiencies here involved the respondent in his computation of the taxable income of each petitioner determined that in computing the alternative tax on long-term capital gains, the amount of such gains could not be reduced by the amount set aside for charitable purposes and in each case eliminated the reduction made by petitioner for an amount set aside for charitable purposes.

The single issue presented in each of the cases is whether under the alternative method of computing the tax on taxable long-term capital gains provided in section 1201(b) of the Code of 1954, the 25-percent tax rate is to be applied to the taxable net long-term capital gain unreduced by an amount set aside for charitable purposes as was done by respondent or is to be applied to the taxable net long-term capital gain reduced by the amounts set aside for charitable purposes as was done by petitioners.

Section 1201(b) provides as follows:

SEC. 1201. ALTERNATIVE TAX.

(b) OTHER TAXPAYERS.—If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, then, in lieu of the tax imposed by sections 1 and 511, there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—

(1) a partial tax computed on the taxable income reduced by an amount equal to 50 percent of such excess, at the rate and in the manner as if this subsection had not been enacted, and

(2) an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss.

A similar question arising under section 117(c)(2) of the Code of 1939, which contained provisions similar to those in section 1201(b), *supra*, was presented in *Walter M. Weil*, 23 T.C. 424 (1954), affd. 229 F. 2d 593 (C.A. 6, 1956), a case herein relied on by respondent, and was decided adversely to the position of the petitioners here. In that case the taxpayers' statutory credits and deductions, consisting of, among others, charitable contributions, exceeded their ordinary income as distinguished from taxable capital gain. There, after a consideration of the various earlier statutory provisions imposing a tax on capital gain, we held that in computing the alternative tax pursuant to section 117(c)(2) the 50-percent capital gains rate as provided in that section was to be applied to the taxable long-term capital gain unreduced by the amount of the excess credits and deductions. In

affirming the foregoing holding the Court of Appeals for the Sixth Circuit said: "The section involved is clear and unambiguous [section 117(c)(2)]. It calls for no interpretation and no unfairness therein invites search for a formula other than the one provided." In addition to the foregoing the rule is now well established that deductions are a matter of legislative grace and that one who seeks a deduction must be able to point to a statute which provides for the allowance of the deduction and show that he comes within the terms of the statute. *New Colonial Co.* v. *Helvering*, 292 U.S. 435 (1934), affirming 24 B.T.A. 886 (1931); *Deputy* v. *du Pont*, 308 U.S. 488 (1940); *Interstate Transit Lines* v. *Commissioner*, 319 U.S. 590 (1943).

Recognizing the holding in the *Weil* case, the petitioners seek to avoid its application here. They state on brief:

The only question presented for the Court's determination is whether the portions of petitioners' long-term gains permanently set aside or to be used for charitable purposes are allowable charitable deductions under Section 642(c) of the 1954 Code, or whether the deductions are barred under the Weil case because of the alternative tax computation. Other questions have been conceded or are not in dispute.

The respondent concedes that the portions of the petitioners' long-term capital gains set aside or to be used for charitable purposes are, under section 642(c) of the Code of 1954, allowable in 1954 as ordinary deductions and as such are not barred by the *Weil* case but, under that case, are rendered ineffective for reducing the taxable long-term capital gain of the petitioners for the purpose of the alternative tax computation.

Section 170 of the Code provides for the allowance in computing the taxable income of individuals of deductions within specified limitations for contributions made to prescribed classes of charitable organizations. Section 642(c) of the Code provides for the allowance as a deduction in computing the taxable income of trusts, in lieu of the deductions allowed individuals by section 170, any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for other charitable purposes.

Since the respective petitioners owned the shares of the Statler stock which they sold, the gain realized on the sale of the shares constituted long-term capital gain received and owned by the petitioners. Since the trust agreement of January 1, 1920, did not name any charitable organization or group as a beneficiary of the trusts and did not otherwise provide that any particular charitable organization or group should be the recipient of any gains or income of the trusts, it is apparent that the trust agreement did not vest in any charitable organization or group any right or interest in trust property or trust in-

come so as to entitle it to demand or to receive any portion of trust gains or income. On the contrary, the trust agreement provided that the trustees should distribute not less than 15 percent nor more than 30 percent of the total net income of the respective trusts each year, such percentage to be determined by the trustees, to such charitable organizations or groups and in such amounts as determined at first by the trustees and then, as the children of the grantor became 21 years of age, by the trustees and the children. In such a situation any income or long-term capital gains distributed by the petitioners herein to charitable organizations or groups occupies a position not unlike the income received or long-term capital gain realized by an individual taxpayer which he contributes to charitable organizations. The fact that under the compromise agreement it was agreed that a portion of the gains realized from the sale of the Statler stock constituted income to petitioner trusts and as such was distributable to the income beneficiaries of the respective trusts does not alter the situation. Such portions of the gains so agreed upon were subject to the requirement of the trust agreement that a percentage thereof determined by the trustees be distributed or set aside for charitable purposes, and the fact of such requirement was recognized in the compromise agreement. In view of the foregoing we sustain the respondent's position that the portions of petitioners' long-term capital gain set aside or to be used for charitable purposes constitute, under section 642(c), allowable ordinary deductions in 1954 and as such are not barred by the *Weil* case but, under that case, are rendered ineffective for reducing the long-term capital gain of the petitioners for the purpose of the alternative tax computation under section 1201(b).

The petitioners point out that in *United States* v. *Memorial Corporation*, 244 F. 2d 641 (C.A. 6, 1957), the same court which affirmed the *Weil* case has held that the latter case is inapplicable to capital deductions. In the *Memorial Corporation* case the Court of Appeals held that an expenditure made for selling certain certificates of indebtedness, there involved, in order to procure capital was of the same character as commissions paid for marketing bonds for the purpose of procuring capital and was an expenditure properly chargeable to capital account; that the unamortized portion of such expenditure constituted a portion of the basis of the corporation's assets which it sold upon its liquidation and dissolution and constituted a proper deduction from the proceeds of sale in a computation of the amount of the corporation's long-term capital gain. There the court clearly pointed out that the deductions sought in the *Weil* case were those allowable as deductions from ordinary income and that it had held in that case that such deductions could not be made from capital gain

before computing the tax thereon under the alternative method. The instant cases present no question involving the basis of the Statler stock sold by petitioners or any expenditures made by them properly chargeable to capital account. Normally it is only to the extent that the selling price of an asset exceeds the taxpayer's basis therefor that it can be said that he has realized income or gain. Since the Court of Appeals clearly distinguished the *Weil* case from the *Memorial Corporation* case, we conclude that the latter case is without application here because of its factual differences.

The petitioners also point us to *Read* v. *United States*, 320 F. 2d 550 (C.A. 5, 1963), wherein it was held that the deduction under section 691 of the Code of 1954 for the increase in estate tax attributable to the inclusion in the estate of income with respect to a decedent was allowable as an offset against capital gains in computing the tax on such gains under the alternative method. The Court of Appeals was of the view that a denial of the offset against the capital gains in the computation of the tax thereon by the alternative method would result in the imposition of both estate tax and income tax on the amount of the offset, a result which in the court's opinion Congress did not intend. Whatever may be the result of the interplay of section 691 of the Code relating to recipients of income in respect of decedents and other provisions of the Code relating to income tax and estate taxes, it is clear that we do not have involved in the instant cases any question as to income in respect of decedents, nor any question as to the amounts here in issue being subject to estate tax. Accordingly we conclude that the *Read* case in inapplicable and without control here.

Being of the opinion that the decision in the *Weil* case is applicable and controlling, we hold for the respondent.

*Decisions will be entered for the respondent.*