POPE & TALBOT, INC., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5321–71, 5505–71.   Filed April 10, 1973.

*William H. Kinsey*, for the petitioner.
*Gary R. DeFrang*, for the respondent.

OPINION

QUEALY, *Judge:* Respondent determined deficiencies in petitioner's income tax for the taxable year 1966 in the amount of $318,178 and for the taxable year 1967 in the amount of $2,037. The sole question for decision relates to the treatment of the excess so-called "depletion" resulting from an election under section 631(a) in the computation of the alternative tax under section 1201(a).[1]

All of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits are incorporated herein by this reference.

Pope & Talbot, Inc. (hereinafter referred to as petitioner), is a California corporation with its principal office at 1700 SW. Fourth Avenue, Portland, Oreg., and its principal place of business in Portland, Oreg. Petitioner's Federal corporate income tax returns for the taxable years 1966 and 1967 were filed with the district director of internal revenue at Portland, Oreg.

During the taxable years 1966 and 1967, petitioner's principal business activity was the manufacture and sale of timber products. Its only other activity was land development which produced a small profit. For the taxable years involved in this proceeding, the petitioner was bound by a prior election to treat the cutting of its timber in accordance with section 631(a).

In its income tax returns for the taxable years 1966 and 1967, petitioner reported gross profit as follows:

|  | 1966 | 1967 |
|---|---|---|
| Gross receipts | $23,011,676 | $20,760,362 |
| Less: Cost of goods sold | 18,820,047 | 18,721,251 |
| Gross profit | 4,191,629 | 2,039,111 |

The "Cost of goods sold" as claimed in said returns was determined as follows:

|  | 1966 | 1967 |
|---|---|---|
| Inventory at beginning of year | $5,916,890 | $5,344,667 |
| Merchandise bought for manufacture or sale | 6,675,657 | 6,923,360 |
| Salaries and wages | 5,561,690 | |
| Other costs | 6,010,477 | 10,641,800 |
| Total | 24,164,714 | 22,909,827 |
| Less inventory at end of year | 5,344,667 | 4,188,576 |
| Cost of goods sold | 18,820,047 | 18,721,251 |

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Pursuant to the election to treat the cutting of its timber under section 631(a), there was included in inventory and reflected as a part of the cost of goods sold the fair market value of such timber as of the first day of the taxable year, as determined by petitioner. In accordance therewith the resulting gain, which was thus included in inventory and reflected as a part of the cost of goods sold, was as follows:

|  | 1966 | 1967 |
|---|---|---|
| Fair market value per return | $3,066,225 | $2,076,231 |
| Adjusted basis | 1,372,098 | 1,109,300 |
| Gain computed under sec. 631(a) | 1,694,127 | 966,931 |

After giving effect to petitioner's concessions with respect to certain other adjustments, the petitioner's taxable income, as reflected in its returns, was as follows:

|  | 1966 | 1967 |
|---|---|---|
| Gross receipts | $23,011,676 | $20,760,362 |
| Less: Cost of goods sold | 18,820,047 | 18,721,251 |
| Gross profit | 4,191,629 | 2,039,111 |
| Other ordinary income | 677,194 | 673,829 |
| Capital gain—timber cutting | 1,694,127 | 966,931 |
| Other long-term capital gain | 105,402 | 43,180 |
| Total income | 6,668,352 | 3,723,051 |
| Total itemized deductions | 5,054,568 | 3,401,358 |
| Taxable income | 1,613,784 | 321,693 |

In his notice of deficiency for the taxable year 1966, the respondent determined that the fair market value as of the first day of the taxable year of the timber subject to the election under section 631(a) was $4,588,976. For the taxable year 1967, the parties are in agreement with respect to the valuation of the timber subject to the election under section 631(a).

As a result of the foregoing, after giving effect to other adjustments which are not in dispute, the income tax liability of the petitioner for the taxable year 1966 was computed by the respondent without regard to section 1201(a) by increasing the cost of sales and by increasing capital gains in offsetting amounts of $1,522,751, thereby resulting in no change in taxable income. On this basis, petitioner thus realized taxable income of $1,613,784, on account of which the tax liability amounted to $768,188.

For the taxable year 1966, the alternative tax as computed by the respondent, including a long-term gain of $3,322,280, under section 1201(a), exceeded the tax liability of $768,188 computed without regard

to section 1201(a). Accordingly, respondent's determination is based on a computation of petitioner's tax liability without giving effect to the alternative tax under section 1201(a).

In computing the alternative tax under section 1201 for the taxable year 1966, the petitioner seeks to reduce the amount of gain resulting from the election under section 631(a) by the amount of corresponding loss which results from including the timber appreciation in the cost of sales. Petitioner also contends that the fair market value of the timber cut and used during the taxable year 1966 as of the first of that year was overstated by the respondent. While there is no dispute with respect to the fair market value of the timber cut and used during the taxable year 1967 as of the first of that year, the petitioner contends that the resulting loss from operations should likewise be applied to reduce the recognizable capital gain under section 1201(a).

The petitioner is engaged in the manufacture and sale of timber products. For the taxable years in question, the petitioner had elected, pursuant to section 631(a), to treat the cutting of timber for sale or for use in its trade or business as a sale or exchange of a capital asset held for more than 6 months. In such cases the resulting gain is measured by the difference between the fair market value of such timber as of the first day of the taxable year and the adjusted basis of such timber in the hands of the taxpayer.[2]

The term "fair market value" as used in the statute is defined as the price at which property would change hands between a willing seller and a willing buyer, neither being under any compunction to buy or to sell. The method to be followed by the taxpayer in determining fair market value for purposes of the election under section 631(a) is prescribed by regulation. Sec. 1.611-3(f), Income Tax Regs.

---

[2] Sec. 631(a) provides:

(a) ELECTION TO CONSIDER CUTTING AS SALE OR EXCHANGE.—If the taxpayer so elects on his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than 6 months before the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. If such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. If a taxpayer makes an election under this subsection, such election shall apply with respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding on the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Secretary or his delegate, on showing of undue hardship, permits the taxpayer to revoke his election; such revocation, however, shall preclude any further elections under this subsection except with the consent of the Secretary or his delegate. For purposes of this subsection and subsection (b), the term "timber" includes evergreen trees which are more than 6 years old at the time severed from the roots and are sold for ornamental purposes.

It was stipulated that the principal executive officer of the petitioner would, if called upon, testify that he would not have purchased the timber in question at the fair market value proposed by the respondent for the taxable year 1966. No other evidence was presented with respect to the fair market value of such timber. If, as contended by petitioner, respondent's valuation was excessive, the amount of such excess should have been established by evidence either with respect to contemporaneous prices at which such timber was purchased and sold or by expert testimony. The subjective evidence relied on by petitioner is no substitute for such proof. Cf. *South Alabama Land Co.* v. *Commissioner*, 104 F. 2d 27 (C.A. 5, 1939). In the absence of such proof, we are constrained to find that the fair market value of the timber in question was the amount set forth by the respondent in his notice of deficiency.

There remains for decision the question whether, in determining the alternative tax under section 1201(a), the loss sustained by the petitioner from operations during the taxable year may be applied to reduce the gain resulting from petitioner's election under section 631(a).

Insofar as material herein, section 1201(a) provides as follows:

SEC. 1201. ALTERNATIVE TAX.

(a) CORPORATIONS.—If for any taxable year the net long-term capital gain of any corporation exceeds the net short-term capital loss, then, in lieu of the tax imposed by sections 11, 511, 821 (a) or (c), and 831(a), there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—

(1) a partial tax computed on the taxable income reduced by the amount of such excess, at the rates and in the manner as if this subsection had not been enacted, and

(2) an amount equal to 25 percent of such excess, or, in the case of a taxable year beginning before April 1, 1954, an amount equal to 26 percent of such excess.

Section 1201(b) provides for an alternative tax to be computed in the same manner in the case of "Other Taxpayers" such as individuals, trusts, etc.

In computing the tax under section 1201, this Court held that, at least as a general rule, the net long-term capital gain on which the tax shall be computed is not reduced on account of any excess of deductions over other income. Thus, the minimum tax under section 1201 is the prescribed percentage of the long-term capital gain. *Walter M. Weil*, 23 T.C. 424 (1954), affd. 229 F. 2d 593 (C.A. 6, 1956).

Following the decision of this Court in the *Weil* case, there arose certain situations in which the net long-term capital gain under section 1201 was reduced on account of specific deductions or expenses. See *United States* v. *Memorial Corporation*, 244 F. 2d 641 (C.A. 6,

1957); *Read* v. *United States*, 320 F. 2d 550 (C.A. 5, 1963); *Meissner* v. *United States*, 364 F. 2d 409 (Ct. Cl. 1966); *Statler Trust* v. *Commissioner*, 361 F. 2d 128 (C.A. 2, 1966), reversing 43 T.C. 208 (1964). In *Chartier Real Estate Co.*, 52 T.C. 346 (1969), affd. 428 F. 2d 474 (C.A. 1, 1970), this Court reaffirmed its decision in the *Weil* case, albeit recognizing that intervening decisions may have given rise to exceptions to the rule in that case. Without regard to the question whether this Court agrees with those decisions, and we need not decide that, we find no basis in the instant case to depart from that rule.

The petitioner argues that a different rule is required by reason of the specific language in section 631(a) which prescribes that the fair market value of the timber subject to an election under section 631(a) shall thereafter be considered as the cost of such timber to the taxpayer "for all purposes for which such cost is a necessary factor." The petitioner would liken such language to the language relied upon in *Read* v. *United States, supra*, and *Meissner* v. *United States, supra*. The petitioner further points out that if such cost, together with other expenses and deductions, exceeds the income computed without regard to the capital gain resulting from the "write-up" of the value of the timber, the intended tax benefit under section 631(a) may be reduced or wholly eliminated.

In recognition of the fact that standing timber represents accretion or growth over a period of years, by section 631(a) the Congress gave taxpayers *an election* to treat the appreciation in the value of such timber over the years differently from the income to be derived as a part of its logging operations. However, there is no assurance that a taxpayer will necessarily and always be benefited thereby. In fact, the statute recognizes that there may be a detriment. By its terms, the election under section 631(a) is "binding on the taxpayer for the taxable year for which the election is made and for all subsequent years," unless the Commissioner consents to a revocation.

Under the statutory scheme, the timber which qualified for special treatment under section 631(a) was deemed to have been sold at a price equal to its fair market value as of the first day of the taxable year. The resulting gain was to be treated in the same manner as any other gain from the sale or exchange of a capital asset. The taxpayer's income from operations was thereupon reduced by including the fair market value of the timber as a part of the cost of goods sold. This separability in treatment by virtue of section 631(a) of the unrealized appreciation on the one hand and the income (or cost) from operations on the other would seem to require application of the same rule which was enunciated by this Court in *Walter M. Weil, supra*, and *Chartier Real Estate Co., supra*.

There is no more justification to reduce the gain subject to the alternate tax on account of a loss from operations in this case than there was to reduce the operating loss carry-forward in *Chartier Real Estate Co.*, *supra*, by the amount of gain which was subjected to the alternate tax. In fact, to do so would, as is demonstrated by petitioner's alternate position, be tantamount to valuing the timber for purposes of section 631(a) at an amount less than its fair market value as of the first of the taxable year. Whether the valuation is reduced before computing the gain under section 631(a) or the loss from operations which resulted from such valuation is applied to reduce the gain for purposes of the alternate tax, the result would be the same.

*Decisions will be entered under Rule 50.*