J. T. BRIDGES, JR., AND DORIS E. BRIDGES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ADDIE BELLE BRIDGES EDWARDS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6313-71, 6322-71.    Filed August 28, 1975.

*Hugh R. Dowling, Howard O. Morris, Jr.,* and *John W. Mooers,* for the petitioners.

*Robert J. Shilliday,* for the respondent.

GOFFE, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income tax as follows:

| Petitioner | Taxable year | Deficiency |
|---|---|---|
| J. T. Bridges, Jr., and | | |
| Doris E. Bridges | 1963 | $2,177.00 |
| | 1964 | 1,631.81 |
| Addie Belle Bridges Edwards | 1963 | 22,392.90 |
| | 1964 | 6,936.67 |

These cases were consolidated for trial, briefs, and opinion. The sole issue for decision is whether the deduction allowable for estate tax attributable to income in respect of a decedent (sec. 691(c))[1] which is long-term capital gain must be offset against the long-term capital gain or is allowable as an itemized deduction where the deduction does not exceed such net long-term capital gain.

FINDINGS OF FACT

Some of the facts are stipulated. The stipulation of facts and exhibits are incorporated by reference.

Petitioners J. T. Bridges, Jr., and Doris E. Bridges, husband and wife, resided in Jasper, Fla., when they filed their petition. Their joint Federal income tax returns for the taxable years 1963 and 1964 were filed with the District Director of Internal Revenue, Jacksonville, Fla.

Petitioner Addie Belle Bridges Edwards (formerly Addie Belle Bridges) resided in Clearwater, Fla., when she filed her petition. She is the widow of J. T. Bridges, Sr., and filed her individual Federal income tax returns for the taxable years 1963 and 1964 with the District Director of Internal Revenue, Jacksonville, Fla.

J. T. Bridges, Sr., owned approximately 16,324 acres of timberland located in Hamilton County, Fla., and in Clinch and Echols Counties, Ga. On December 29, 1958, he and his wife, Addie Belle Bridges, entered into a lease agreement and timber-cutting contract with Owens-Illinois Glass Co. effective on January 1, 1959. J. T. Bridges, Sr., died testate on April 6, 1962, and the said timberland encumbered with the lease agreement and timber-cutting contract was valued for estate tax purposes on the Federal estate tax return at an aggregate value of $682,588.54 as of the date of death. That was the value finally determined for estate tax purposes. In his will, the decedent devised and bequeathed one-half of his estate to his wife and the remainder in trust for the benefit of his four children, equally, of which J. T. Bridges, Jr., a petitioner herein, is one.

A fiduciary income tax return was filed for the estate of J. T. Bridges, Sr., with the District Director of Internal Revenue,

---

[1] All section references are to the Internal Revenue Code of 1954 in effect during the years in issue.

Jacksonville, Fla., for its initial taxable period commencing April 6, 1962, through February 28, 1963.

In each of the taxable years of the estate ended February 28, 1963, and February 29, 1964, Owens-Illinois paid the estate and heirs the total of $73,453.73 pursuant to the ground lease and timber-cutting contract.

In 1964, Addie Belle Bridges transferred to her four children in equal shares a 171/683 interest in the Owens-Illinois ground rent and timber-cutting contract which was approximately one-half of the half interest she received under the will of J. T. Bridges, Sr.

The estate and beneficiaries which are petitioners in the instant case reported the receipts from Owens-Illinois in the manner reflected on the following schedule:

OWENS-ILLINOIS RECEIPTS REPORTED ON
FEDERAL INCOME TAX RETURNS

| | Fiduciary returns | Returns of Addie Belle Bridges | Returns of J. T., Jr., and Doris E. Bridges |
|---|---|---|---|
| *TYE 2/28/63 of estate and 1963 of individuals* | | | |
| Gross receipts from Owens-Illinois | $73,453.73 | | |
| Less cost | 64,778.84 | | |
| Long-term capital gain | 8,674.89 | | |
| Net long-term capital gain distributed to beneficiaries and reported by them as long-term capital gain | 8,674.89 | $4,337.45 | $1,084.36 |
| 50 percent thereof included by beneficiaries in gross income | | 2,168.72 | 542.18 |
| *TYE 2/29/64 of estate and 1964 of individuals* | | | |
| After gift by Addie Belle Bridges of 171/683 interest to her four children in equal shares: | | | |
| Gross receipts from Owens-Illinois | 55,063.41 | | 4,597.58 |
| Less cost | 44,963.35 | | 3,754.26 |
| Long-term capital gain | 10,100.06 | | 843.32 |
| Long-term capital gain from Owens-Illinois distributed to beneficiaries and reported by them as long-term capital gain | 10,100.06 | 4,666.19 | 1,683.34 |
| Long-term capital gain from Owens-Illinois reported by beneficiaries as long-term capital gain | | 4,666.19 | 2,526.66 |
| 50 percent thereof included by beneficiaries in gross income | | 2,333.09 | 1,263.33 |

The Commissioner, in his statutory notices of deficiency, determined that the entire $73,453.73 received by the estate from Owens-Illinois in each of the taxable years ended February 28, 1963, and February 29, 1964, constituted ordinary income instead of long-term capital gain as reported, and he allowed no recovery of cost basis.

All of the payments received by the estate and beneficiaries from Owens-Illinois during the years 1963 and 1964 constituted long-term capital gain because the total of the receipts from Owens-Illinois from the date the ground lease and timber-cutting contract was effective until the end of 1964 did not exceed the

fair market value of timber standing on the date the contract was executed.

The cost basis of the aggregate of the ground lease and timber-cutting contract with Owens-Illinois in the hands of J. T. Bridges, Sr., was $35,518.05 which is properly apportioned as cost basis to the beneficiaries of the estate in the amounts of $22,618.42 and $12,849.63 for the taxable years 1963 and 1964, respectively. The estate and beneficiaries should have reported the receipts from the Owens-Illinois contract as follows:

CORRECT REPORTING OF OWENS-ILLINOIS RECEIPTS ON FEDERAL INCOME TAX RETURNS

| TYE 2/28/63 of estate and 1963 of individuals | Fiduciary returns | Returns of Addie Belle Bridges | Returns of J. T., Jr., and Doris E. Bridges |
|---|---|---|---|
| Gross receipts from Owens-Illinois | $73,453.73 | | |
| Less basis | 22,618.42 | | |
| Long-term capital gain | 50,835.31 | | |
| Net long-term capital gain distributed to beneficiaries and reportable by them as long-term capital gain | 50,835.31 | $25,417.66 | $6,354.42 |
| 50 percent thereof includable by beneficiaries in gross income | | 12,708.83 | 3,177.21 |
| *TYE 2/29/64 of estate and 1964 of individuals* After gift by Addie Belle Bridges of 171/683 interest to her four children in equal shares: | | | |
| Gross receipts from Owens-Illinois | 73,453.73 | | |
| Less basis | 12,849.63 | | |
| Long-term capital gain distributed to beneficiaries | 60,604.10 | 15,128.84 | 11,386.82 |
| 50 percent thereof included by beneficiaries in gross income | | 7,564.42 | 5,684.41 |

The Federal estate tax finally determined for the estate of J. T. Bridges, Sr., was $119,610.92.

The correct amounts deductible by petitioners in the taxable years 1963 and 1964 as Federal estate tax attributable to the Owens-Illinois income in respect of the decedent, J. T. Bridges, Sr., under section 691(c) are as follows:

| | 1963 | 1964 |
|---|---|---|
| Addie Belle Bridges Edwards | $5,529.38 | $2,556.16 |
| J. T. Bridges, Jr., and Doris E. Bridges | 1,382.35 | 1,920.86 |

OPINION

The parties agree that the receipts from Owens-Illinois in the taxable years 1963 and 1964 are taxable under the provisions of Rev. Rul. 62-81, 1962-1 C.B. 153. Respondent concedes that the entire amounts received from Owens-Illinois in 1963 and 1964 constitute long-term capital gains, not ordinary income. The parties also agree upon the cost basis applicable to the Owens-

Illinois receipts, petitioners conceding that the cost basis shown on their returns was incorrect. There is no disagreement between the parties as to the amounts deductible for the estate tax attributable to the Owens-Illinois income in respect of the decedent, J. T. Bridges, Sr., under section 691(c). The only dispute is the correct treatment of the deductions on the returns of petitioners. They contend that the deductions are allowable in full against adjusted gross income. Respondent contends that the section 691(c) deduction must be offset against long-term capital gains before allowance of the 50-percent deduction under section 1202. The effect of respondent's position is to allow only 50 percent of the section 691(c) deductions.

Section 691(c)[2] allows a deduction to a taxpayer who has included in his income an item of income in respect of a decedent. The deduction allowed represents the estate tax paid by reason of including that item of income in the decedent's gross estate. In the instant case, the amounts of income in respect of a decedent were paid or set aside for the beneficiaries of the estate;

---

[2] SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.

(c) DEDUCTION FOR ESTATE TAX.—

(1) ALLOWANCE OF DEDUCTION.—

(A) GENERAL RULE.—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a)(1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a)(1).

(B) ESTATES AND TRUSTS.—In the case of an estate or trust, the amount allowed as a deduction under subparagraph (A) shall be computed by excluding from the gross income of the estate or trust the portion (if any) of the items described in subsection (a)(1) which is properly paid, credited, or to be distributed to the beneficiaries during the taxable year. This subparagraph shall apply to the same taxable years, and to the same extent, as is provided in section 683.

(2) METHOD OF COMPUTING DEDUCTION.—For purposes of paragraph (1)—

(A) The term "estate tax" means the tax imposed on the estate of the decedent or any prior decedent under section 2001 or 2101, reduced by the credits against such tax.

(B) The net value for estate tax purposes of all the items described in subsection (a)(1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a)(1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b). Such net value shall be determined with respect to the provisions of section 421(c)(2), relating to the deduction for estate tax with respect to stock options to which part II of subchapter D applies.

(C) The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value.

therefore, the deductions in question are ultimately deductible by the beneficiaries who are the petitioners.

The narrow issue is one of first impression in our Court but, as will be explained in detail later, it is readily resolved by reliance upon our decision in *Estate of Viola E. Bray*, 46 T.C. 577 (1966), affd. 396 F.2d 452 (6th Cir. 1968). Neither party relies upon the regulations and the regulations do not resolve the issue.

Respondent relies upon *Read v. United States*, 320 F.2d 550 (5th Cir. 1963). An appeal in the instant case would lie in the Fifth Circuit. In *Read*, the estate offset the section 691(c) deduction against long-term capital gains and elected the alternative tax on capital gains, presumably because there was not enough ordinary income to absorb the deduction. The Government in that case took a position opposite to the position it urges here; i.e., that the deduction must be taken against ordinary income. The Court of Appeals, in holding for the estate, held that the purpose of section 691(c) was to allow a deduction for the estate tax paid in order not to tax the income item in full for estate tax purposes and again in full for income tax purposes. *Read* is, therefore, distinguishable because it involves the alternative tax on capital gains which is a flat rate of tax alternative to the taxation of 50 percent of capital gains at graduated normal tax rates. *Chartier Real Estate Co.*, 52 T.C. 346, 354 (1969), affd. per curiam 428 F.2d 474 (1st Cir. 1970). In *Chartier* we followed *Walter M. Weil*, 23 T.C. 424 (1954), affd. 229 F.2d 593 (6th Cir. 1956), which the Fifth Circuit relied upon in *Read*. We also followed *Weil* in *Pope & Talbot, Inc.*, 60 T.C. 74, 79 (1973). The Commissioner also relies upon *Weil* in his Rev. Rul. 56-247, 1956-1 C.B. 383. Moreover, applying the rationale of *Read* to the instant case compels allowance of the deduction in full as petitioners contend. For the foregoing reasons, we hold that *Read* is distinguishable on its facts and there is no reason to apply the rule in *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

*Read v. United States, supra,* and *Walter M. Weil, supra,* were both decided before our decision in *Estate of Viola Bray, supra.* In that case, the taxpayer sought to offset capital gains on its income tax return with selling expenses claimed as administration expenses on its estate tax return. The Commissioner contended that allowance of the offset would

constitute a double deduction prohibited by section 642(g) of the Code. We held otherwise for the reason that section 642(g) was aimed at true statutory deductions not offsets to the selling price. We think that rationale applies here. A casual reading of section 691(c) clearly reveals that a provision is made for a *deduction.* Respondent, in the instant case, attempts to allow the deductible amount only as an offset. *Bray* has been followed by two circuits. *Commerce Trust Co. v. United States,* 438 F.2d 111 (8th Cir. 1971); *Estate of Marcellus L. Joslyn v. Commissioner,* 500 F.2d 382 (9th Cir. 1974). Indeed, the Commissioner now recognizes that selling expenses are offsets, not deductions, and he follows our decision in *Bray.* Rev. Rul. 71-173, 1971-1 C.B. 204.

In the instant case, the income in respect of a decedent exceeded the section 691(c) deductions; therefore, it is not necessary for us to decide whether the section 691(c) deduction may be deducted against unrelated income as was involved in *Goodwin v. United States,* 458 F.2d 108 (Ct.Cl. 1972). Nor is it necessary for us to decide the appropriate treatment when the taxpayer elects to have the gain taxed under the alternative tax provided by section 1201(b) because the petitioners in the instant case did not elect the alternative tax on capital gains.

In holding that petitioners are not required to offset their section 691(c) deductions against their long-term capital gains before the section 1202 reduction of 50 percent, we follow the decision of the Court of Appeals for the Tenth Circuit in *Quick v. United States,* 503 F.2d 100 (10th Cir. 1974), affg. 360 F.Supp. 568 (D. Colo. 1973). That court points out that the effect of the Commissioner's position is to cut in half the section 691(c) deduction which the taxpayer should be allowed and holds that such a result would be inconsistent with the decision of the Fifth Circuit in *Read v. United States, supra.* We agree.

*Decisions will be entered under Rule 155.*