**SOUTH ALABAMA LAND CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9052.

Circuit Court of Appeals, Fifth Circuit.
May 23, 1939.

Geo. E. H. Goodner, of Washington, D. C., for petitioner.

Wm. B. Waldo and Sewall Key, Sp. Assts. to Atty. Gen., Jas. W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

We are called upon to review a decision of the Board of Tax Appeals fixing the 1913 value of 15,500 acres of cut-over land in Escambia County, Alabama, at $5 per acre, as against petitioner's contention that it should be $6 per acre.

The South Alabama Land Company was organized in February, 1912, and, at that time, acquired 20,000 acres of land in said county in exchange for its capital stock. It set the land up on its books at $100,000, or $5 per acre, which represented the opinion of the stockholders as to its value at that time.

In 1913, petitioner sold turpentine rights on the land for $10,000. In 1915, it exchanged 4,500 acres for real estate in St. Louis worth $100,000, but subject to a mortgage of $50,000. On the sale of the St. Louis property, in 1922, for $74,000, petitioner used as its cost basis $50,000, and reported a net profit of $24,000. The exchange of the 4,500 acres for the St. Louis real estate being non-taxable, respondent, in auditing the 1922 return, accepted a $11.11 per acre valuation for the acreage as of March 1, 1913. Between 1913 and 1932, petitioner cut and sold timber to the extent of $35,149.08. In 1932, it sold 13,500 acres, and the timber rights only on the remaining 2,000 acres, for $75,357 net.

The Board determined the taxable profit from the last-mentioned transaction by fixing the March 1, 1913, value of the land at $5 per acre, and making its calculations on the basis of this valuation and the facts stated above. The profit having been determined, it was spread over the period of years during which payments were to accrue, and the tax calculated for each year on the installment basis. Due regard was given to the proportionate part of each item of depletion to the entire tract; and the residual value of the 2,000 acres of land, on which only the timber rights were sold, was fixed at $1,000.

The only question presented on this appeal is with reference to the $5 per acre valuation as of March 1, 1913. Two expert witnesses placed this valuation at $7 to $8 per acre, one of whom testified to a rising market from February, 1912, to March, 1913; but we cannot agree with petitioner that this expert testimony was uncontradicted. The opinions of experts, duly qualified, may or may not have been more convincing than the conduct of the owners themselves in setting up a book value for the land at the time it was acquired by petitioner, and the subsequent conduct of the parties. Weighing this evidence is within the province of the Board, and its findings thereon are not to be disturbed on review. Dayton Power & Light Co. v. Public Utilities Commission of Ohio, 292 U.S. 290, 54 S.Ct. 647, 78 L.Ed. 1267; Am-Plus Storage Battery Co. v. Commissioner, 9 Cir., 35 F.2d 167; Anchor Co. v. Commissioner, 4 Cir., 42 F.2d 99; Tracy v. Commissioner, 6 Cir., 53 F.2d 575. Under the same principle, it was within the discretion of the Board to reject the testimony of the one witness who stated that there was a rising market from February, 1912, to March, 1913.

As to the approval of a valuation of $11.11 per acre for the transaction occurring in 1915, it is not clear from the record what property was being valued. The maps in evidence disclose that this property might well have been considered more valuable than the remainder of the tract, due to its proximity to towns and railroads.

As to the offer of $7 per acre, which the Board excluded, it is well established that such evidence is incompetent, it being but a species of indirect evidence of the opinion of the person making the offer, without opportunity to cross-examine, or determine good faith. Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211.

Likewise, the soil survey was not admissible, and, if so, would have been of no probative value. It does not purport to give the value of any specified area, but the average value over an area of almost a thousand square miles. It does not pur-

port to be a finding of value by any responsible agent or department of the Government, but merely an expression of opinion. It does not even bind the Department of Agriculture to the opinion expressed therein, but merely reports the results of an investigation made by persons who may or may not have acquired information upon which to base an opinion, or may have obtained their data from other persons, none of whom are subject to cross-examination. Cf. Morris v. Harmer, 7 Pet. 554, 32 U.S. 554, 8 L.Ed. 781.

The decision of the Board of Tax Appeals is affirmed.