Estate of John C. Mitchell, Deceased, Lillian C. Mitchell, Executrix v. Commissioner.
Estate of Mitchell v. Commissioner
Docket No. 2533-67.
United States Tax Court
T.C. Memo 1968-297; 1968 Tax Ct. Memo LEXIS 3; 27 T.C.M. (CCH) 1568; T.C.M. (RIA) 68297; December 30, 1968, Filed *3 Johannes R. Krahmer, James M. Tunnell, Jr., and S. Samuel Arsht, 3000 Du Pont Bldg., Wilmington, Del., for the petitioner. Albert J. O'Connor, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $122,474.90. The parties have agreed that the sole question for our determination is the value as of January 23, 1963 of a tract of land, owned by the decedent at the time of his death. 1569 Some of the facts are stipulated and are found accordingly. Petitioner is the surviving spouse of John C. Mitchell, who died January 23, 1963, and the sole executrix under his will. Her legal residence at the time of the filing of the petition herein was Kennett Square, Pennsylvania. The estate tax return was filed with the district director of internal revenue, Philadephia, Pennsylvania. The decedent's estate included 170.5 acres of land located in the northern part of Mill Creek Hundred, New Castle County, Delaware. A portion of the land had been farmed, but the parties are in agreement that the highest and best use of the property is as a low density residential *4 subdivision. As of the critical date, the land was zoned R-2 by New Castle County, which provides for agricultural or residential use with minimum lot size of one-half acre. The site contained a farm house, several tenant's houses, and farm buildings, but neither party has assigned any value to these structures for the purpose of this litigation. The site is divided by Old Wilmington Road, the land on the northeast side being high and rolling with moderate to occasionally sharp changes in elevation, while the land on the southwest side is low and consequently has a high water table. The site also has frontage on Benge Road and McGovern Road. As of the critical date, central water and sewage service were not available, and there were no plans to develop these services, but electric and telephone services were available along Old Wilmington Road. Mill Creek Hundred has experienced substantial population growth, rising from 7,000 in 1950 to 23,000 in 1960, although most of this growth has been in the southern part of the area. The following represents cash sales of land in the same geographic area used by the appraisers for both parties as comparable: Date
Acreage
Price per acre
McClinchy to Morris
9/ 5/58
146.814
$1,000
Sharpless to Kane
1/15/59
95.12
1,000
Dennison to Catholic Diocese
3/ 1/60
141.586
1,518
Kelly to Robino
12/29/61
25.74
1,360
*5 Other sales of land in the same geographic area and having certain features of comparability include the following: (a) Morris to Auburn Hills - 146 acres sold on April 10, 1959 for $249,454, or $1,699 per acre, with $200,000 represented by a purchase money mortgage. (b) Wells to Rivas - 17.36 acres sold on February 2, 1963 for $35,000 cash, or $2,011 per acre. This property was better located and anticipated water service. Only a portion of the purchase price was paid in cash. (c) MacGuigan to Dean - 101.7 acres sold on December 31, 1963 for $144,545 cash, or $1,421 per acre. (d) Marks to Errigo and Rosier to Errigo - 40.53 acres sold on June 10, 1963 for $97,000, or $2,400 per acre, with $77,600 represented by a purchase money mortgage, and 100 acres sold on July 1, 1963 for $260,000, or $2,600 per acre, with approximately $185,000 represented by a purchase money mortgage. Provision of sewer and water service had previously been publicly announced. (e) Pierson to Hollingsworth - 62 acres sold on November 1, 1963 for $115,000 cash, or $1,855 per acre, and resold on January 4, 1965 for $123,000 cash, or $1,985 per acre. This property was adjacent to a developed tract of *6 single family dwellings which had a water supply and to an important commercial and a large educational institution. Once again we are confronted with the issue of valuation of property (i. e., land) includable in a gross estate, the resolution of which defies talismanic precision and involves at best, an educated guess. See Buck v. United States 154 F. Supp. 90, 92 (D. Del. 1957); Morris M. Messing, 48 T.C. 502, 512 (1967). Efforts by the parties to arrive at a settlement herein - the most practical and realistic method of disposing of this type of case - ultimately proved fruitless, although both sides receded from their original positions of approximately $586 per acre in the estate tax return and $3,000 per acre in the deficiency notice to $1,000 and $2,000 per acre respectively asserted by petitioner and respondent at the trial. Both parties agree that the valuation should be predicated upon an analysis of the sales of properties in the same geographic area in light of physical 1570 characteristics, location, time, and terms of sale, its best use (in this case for low density residential building), and the availability of necessary service facilities *7 for that use - the comparable sales approach. See, e. g., Buck v. United States, supra. We see no reason to dissect the presentations (including appraisal reports) of the witnesses utilized by both parties. The two witnesses who testified on behalf of petitioner and the one who testified on behalf of the respondent all appeared well qualified as experts. On the whole, we found the testimony of petitioner's witnesses more convincing. Among other things, respondent's position was weakened by the fact that his expert gave considerable weight to sales of smaller tracts with buildings, which were in fact not comparable, and mere offers to sell which, under the circumstances herein, are entitled to little, if any, weight. In this latter connection, we note that respondent's witness included in his appraisal report a letter dated April 23, 1968 reciting the price the author would have been willing to offer on the valuation date in 1963. This letter represents no more than the opinion of one person not subject to cross-examination, and is entitled to no weight whatsoever. South Alabama Land Co. v. Commissioner, 104 F. 2d 27 (C.A. 5, 1939), affirming a Memorandum *8 Opinion of this Court. On the other hand, we have not overlooked the fact the value asserted by petitioner is the lowest amount of any sale claimed by her to be comparable. Similarly, we see no reason to detail the weight which we have accorded to the various sales set forth above. It is sufficient to state that we have taken into account the relative proximity of the dates of those sales to the valuation date herein, comparisons of desirability for projected residential use between the properties sold and the subject land and their location relative to prospective users, the topography of the various parcels, and the extent to which a sale was for cash or on substantial credit terms. We have also considered the upward trend in prices during the period immediately preceding the valuation date, the impact of the expanding population in the area, and the increasing number of residential subdivisions within two to three miles, although we recognize that in 1963 the subject land was beyond the periphery of most of the residential development in the Wilmington area. We conclude, and so find, that the subject land should be valued at $1,400 per acre, or an aggregate of $238,700. Decision *9 will be entered under Rule 50.