**Edna Rice MEISSNER, Dorothy M. Freeman, and Edwin B. Meissner, Jr., Executors of the Estate of Edwin B. Meissner, Deceased,**

v.

**The UNITED STATES.**

**No. 232–63.**

United States Court of Claims.
July 15, 1966.

Henry C. Lowenhaupt, St. Louis, Mo., attorney of record, for plaintiffs. Lowenhaupt, Chasnoff, Freeman & Holland, St. Louis, Mo., of counsel.

Mitchell Samuelson, Washington, D.C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

LARAMORE, Judge.

Plaintiffs are executors of the estate of Edwin B. Meissner who died on September 10, 1956, a resident of St. Louis, Missouri. Prior to June 1, 1951, the decedent had owned for more than six months 82,347 shares of St. Louis Car Company common stock. He sold this holding on June 1, 1951 for $4,940,820, payable in installments from June 15, 1951 through June 18, 1976. The initial payments totaled less than 30 percent of the selling price. The decedent properly elected to report his long-term capital gain under the installment method provided in section 44 of the Internal Revenue Code of 1939. From 1951 to the decedent's death in 1956, the payments reduced the balance due under the contract of sale to $2,635,104. In computing the Federal estate tax, plaintiffs included this item in the gross estate using a fair market value (present value of the future installments) of $2,108,083.20. As it turned out, however, the estate did not have to wait until 1976 for final payment. The purchaser paid the full balance in 1957 and 1958.

■ Under the installment sale provisions, the estate was required to report the income element of each installment received as income in 1957 and 1958. Int. Rev.Code of 1954, §§ 453(d) (3), 691, (a).[1] This income retained its long-term capital gain character, entitling the estate to use the more favorable 25 percent alternative tax rate. § 1201(b). Thus far, the estate has not been permitted to deduct from its net long-term capital gains the estate taxes attributable to the items of installment payment income. The general rule is that taxpayers are "allowed" a deduction for the estate taxes attributable to items of income in respect of decedents. § 691(c) (1) (A). In denying plaintiffs' claim for refund, the government has taken the position that the general rule is of but limited avail to plaintiffs because, when the alternative tax is used, deductions can be taken only from ordinary income, and on the facts established by the petition and affidavit, the estate taxes attributable to the installment payments were substantially greater than the estate's ordinary income in 1957 and 1958.[2]

■ The sole question presented by the parties' motions for summary judgment is whether a taxpayer, in computing the alternative tax, may use the deduction allowed by section 691(c) of the 1954 Code to offset capital gains. This is a rather technical question, so a review of

---

1. All statute section references are to the Internal Revenue Code of 1954, 26 U.S.C. (1964 Ed.), unless otherwise indicated.

2. Plaintiffs' affidavit, which defendant does not challenge, shows gross ordinary income of $64,993.88 in 1957 and $57,592.67 in 1958. The deductions (other than the claimed deduction for estate taxes) in each year approximated $10,000, leaving net ordinary income of roughly $50,000 per year. The record does not show the amount of the claimed section 691(c) (1) (A) deduction, but it is reasonable to infer that it substantially exceeded the 1957 and 1958 net ordinary income because the total Federal estate tax, as adjusted, was $871,897.41, and the installment notes accounted for almost half the gross estate.

normal tax accounting practice may serve to put the issue in sharper focus. Section 1 of the 1954 Code imposes a graduated tax "on the *taxable income* of every individual." (Emphasis added.) Section 641 makes the tax scheme for individuals applicable to estates. Thus, for an estate to determine its "taxable income," it must look to subchapter B, of chapter 1, entitled "Computation of Taxable Income." This subchapter comprehends sections 61 to 301, the general catalogue of income and deduction items. Sections 61 through 63 set out the basic formula for computing taxable income. The starting point is gross income which is the sum of "all income from whatever source derived." From this, "[t]he deductions allowed by this chapter" are taken to arrive at taxable income. If the estate has both so-called ordinary income and long-term gains from the sale of capital assets, section 1201(b) imposes an alternative tax "in lieu of the tax imposed by [section 1] * * * (if such tax is less than the tax imposed by [section 1])." Under this method of computation, the first step is to apply the section 1 rates to the taxable income exclusive of long-term gains (*i. e.*, the ordinary income) and the second step is to apply a 25 percent rate to the long-term gains.[3] There is no mention of deductions in section 1201(b). In other words, it would appear that deductions are allowed under the alternative tax method only implicitly under the first step—*i. e.*, the taxable income *exclusive of long-term gains* is by definition the ordinary income minus deductions. So, if a taxpayer has little or no ordinary income, but does have substantial deductions and long-term gains, use of the alternative tax method may render the deductions useless.

In Weil v. Commissioner of Internal Revenue, 23 T.C. 424 (1954), aff'd, 229 F.2d 593 (6th Cir. 1956), the taxpayers had substantial long-term gains making the alternative tax advantageous. Since their deductions for charitable contributions and taxes were more than twice the ordinary income, they sought to first use the deductions to reduce ordinary income to zero and then use the remainder to reduce the long-term gains. The Tax Court reviewed the history of the applicable 1939 Code alternative tax provision (§ 117(c) (2) ) and concluded that under the express language of the provision the deductions there involved could be used only to reduce ordinary income. The Sixth Circuit affirmed, noting that Congress intended to relieve long-term gains from the progressive rates and that the alternative tax provision though "[p]erhaps * * * not precise * * * reasonably achieves the congressional purpose." 229 F.2d at 596. Recently, the Tax Court followed *Weil* in a case involving this same issue under the 1954 Code. Statler Trust v. Commissioner of Internal Revenue, 43 T.C. 208 (1964), appeal 361 F.2d 128 (2d Cir.). Accordingly, if these cases are correct, and we do not understand plaintiffs to dispute them, plaintiffs can recover here only if their deduction is so different from the charitable deduction or the state tax deduction in *Weil* and *Statler* as to warrant

3. The actual mechanics of section 1201(b) are as follows: (1) "[A] partial tax [is] computed on the taxable income reduced by an amount equal to 50 percent [of the amount by which the net long-term capital gains exceed the net short-term capital losses], * * * at the rate and in the manner as if [section 1201] * * had not been enacted." (2) Then, there is added to the partial tax "an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss."

The 50 percent figure in step 1 is necessary because under section 1202, non-corporate taxpayers are entitled to a deduction equal to 50 percent of the amount by which "the net long-term capital gain exceeds the net short-term capital loss." Taxable income is computed net of this deduction. § 62(3). In other words, a taxpayer first computes his taxable income which is gross income, including all gains, minus deductions. The section 1201(b) formula in its step 1 instructs him to deduct the other 50 percent of his long-term gain and then in its step 2 to apply a 25 percent tax to 100 percent of the gain.

a departure from the result of those cases.

Plaintiffs' argument that the deduction for estate tax from items of income in respect of a decedent is different from other deductions is twofold. First, they argue that the purpose of section 691(c), as it relates to installment sales, is to produce the same result as that under the 1939 Code by avoiding the imposition of both the estate tax and the income tax on the full amount of the income claims. Second, they make the textual argument that the section 691(c) deduction is "allowable *appropriately*" and not just "in computing taxable income" as the other deductions. Regarding section 691(c)'s purpose, a Fifth Circuit case is directly in point. Read v. United States, 320 F.2d 550 (5th Cir.1963). On facts identical to the present, the court rejected the government's argument (defendant's argument here) that "since there is no express provision making the deduction applicable in alternative tax computations, it is clear and certain that the deduction cannot be taken." 320 F.2d at 552. To the court, the statute could be read either way, so a purposive inquiry was paramount, and it looked to the following discussion in *Mertens* for an explanation:

The purpose of Section 691(c) of the 1954 Code (formerly Section 126(c) of the 1939 Code), dealing with the "deduction for estate tax" is to provide approximately the same tax consequences in the case of a decedent whose gross estate includes claims to income as in the case of a decedent all of whose income receivables had been collected (and income tax paid thereon) prior to his death. In the latter case, only the income in cash or its equivalent, net after the income tax paid thereon, would be included in the gross estate for estate tax purposes. But in the case of a decedent whose claims to income are included in his gross estate, except for the provisions of Section 691(c) of the Code, the gross amount of the claims would be subject to estate tax and also to income tax when later collected. In this situation, to avoid the imposition of both estate tax and income tax on the full amount of the income claims, Section 691(c) provides that the recipient of income in respect of a decedent may deduct that portion of the estate tax which is attributable to the inclusion of the right to such income in the decedent's estate. Mertens, Federal Income Tax § 12—102 (b). [320 F.2d at 553.]

The court found additional support, by inference, in the 1954 Code Senate Finance Committee report which noted that "[t]he recipients [of income in respect of a decedent] are allowed an off-setting deduction for any estate tax attributable to the inclusion of this right to income in the decedent's gross estate, but do not acquire a new basis for this property at the date of the decedent's death." S.Rep. 1622, 83d Cong., 2d Sess. (1954) U.S. Code Cong. & Admin.News 1954, p. 4720. See H. Rep. No. 1337, 83d Cong., 2d Sess. (1954).

We are in substantial agreement with the *Read* case and would be content to say little more were it not for the fact that the defendant has forwarned us that such a decision for plaintiffs might prove to be deleterious to the majority of taxpayers having items of income in respect of a decedent. Also, since the facts established by affidavit suggest that there is ordinary income and these facts will be before one of our commissioners in the Rule 47(c) proceedings to determine the amount of recovery, we feel compelled to go further than the court in *Read* and explain how the section 691(c) deduction should operate where there is both ordinary income and capital gain. The essence of defendant's warning is that by allowing plaintiffs to offset capital gains with the section 691(c) deduction this court would be perverting the true intent of Congress. Defendant tells us that its method—*i. e.*, allowing the deduction from ordinary income and not from long-term gain—is what Congress intended because for most taxpayers this method will "minimize the burden of double taxation to a greater extent than would be permitted by the construction of the stat-

ute urged by the taxpayers and by the court in *Read* * * * ." The defendant, of course, has in mind the fact that a deduction produces greater tax savings if used to reduce an item of ordinary income subject to the higher graduated rates. Thus, a $100 deduction gives a $70 tax saving if it offsets $100 of ordinary income in the 70 percent bracket but only a $25 tax saving if it offsets $100 of long-term gain subject to the 25 percent flat rate. If defendant is correct that the section 691(c) deduction must be applicable *either* to ordinary income *or* to capital gain and not both, it would seem that its interpretation of the congressional purpose would be the more reasonable.

We are of the view, however, that taxpayers are not limited to an "either-or" choice; we think that to carry out the purpose of section 691(c), a taxpayer should be able to use the deduction in the way most advantageous to him. Stated differently, he should be able to use it against ordinary income first and any balance against capital gain. This is not without precedent. From 1924 to 1935, the alternative tax provisions expressly allowed taxpayers to use deductions first to reduce ordinary income to zero and to use any balance to reduce long-term capital gains.[4] In the Revenue Act of 1934, § 117(a), 48 Stat. 680, 714, the alternative tax was abandoned and replaced by a scheme that effectively required a certain percentage (based upon the length of the holding period) of capital gains to be included in ordinary income. When the alternative tax method was again adopted in the Revenue Act of 1938, § 117, 52 Stat. 447, 500, the deduction refinement of 1924 to 1935 was absent. The alternative tax provisions of the 1939 and 1954 Codes grew out of the 1938 Act. The Tax Court in Weil v. Commissioner of Internal Revenue, supra, traced this history and concluded that what was expressly allowed in 1924 to 1935 was not allowed thereafter. That court took the

same position in *Statler Trust*, supra, but distinguished the then recently decided *Read* case as involving a section 691(c). deduction.

It is at this point that plaintiffs' textual argument comes into play. Plaintiffs point out that the deductions in the Tax Court cases were provided for in Part VI of subchapter B, which covers sections 161 to 211. Section 161, entitled "Allowance of Deductions," provides: *"In computing taxable income under section 63(a),* there shall be allowed as deductions the items specified in this part * * * ." (Emphasis added.) Section 691(c), by contrast, simply provides that "[a] person who includes an amount in gross income under subsection (a) [covering items of income in respect of a decedent] *shall be allowed,* for the same taxable year, as a deduction [the amount of estate tax attributable to the item] * * * ." (Emphasis added.) Section 691(c) is not in Part VI of subchapter B, so it is not expressly tied to the taxable income computation of section 63(a). And section 63(a), although it defines taxable income as "gross income, minus the deductions allowed by this chapter" (chapter 1 comprehends section 691(c)), does not expressly preclude the applicability of deductions for purposes other than the taxable income computation. Plaintiffs argue that from this we should conclude that the section 691(c) deduction "shall be allowed" not only in computing taxable income, but also in computing the amount of long-term gain to be taxed at 25 percent under the second step of the alternative tax computation.

Plaintiffs' reading is consistent with what we feel was intended by Congress. No doubt, Congress could have introduced this concept for all or some deductions into the present alternative tax provision as it did in 1924; however its failure to do so does not suggest to us any intent that there be no exceptions to the general rule set out in *Weil* and *Statler Trust*.

4. Revenue Act of 1924, § 208(a) (5), 43 Stat. 253, 262; Revenue Act of 1926, § 208(a) (5), 44 Stat. 9, 19; Revenue Act of 1928, § 101(c) (5), 45 Stat. 791, 811; Revenue Act of 1932, § 101(c) (5), 47 Stat. 169, 191.

As the *Read* case shows, Congress intended in section 691(c) "to provide *approximately the same* tax consequences in the case of a decedent whose gross estate includes claims to income as in the case of a decedent all of whose income receivables had been collected (and income tax paid thereon) prior to his death." (Emphasis added.) 320 F.2d at 553. Unless plaintiffs are allowed to use their deduction against long-term gains, the tax consequences will in no way approximate what would have happened if the decedent had paid tax on the income before his death.[5]

██ In holding that the plaintiffs are allowed to use the section 691(c) deduction first against their ordinary income and the balance against their long-term gains, we realize that we may be adding a refinement to *Read*. The court there did not specifically touch on this point, probably because it was not in issue. The taxpayer-estate there proposed an accounting method which showed the entire section 691(c) deduction applied against the capital gain, so we think it is reasonable to assume that the District Court on remand adopted this method. In the present case, however, the facts as presented by plaintiffs and the argument by defendant clearly raise the issue. Again we look to the purpose of the deduction, and this time stress that as a deduction it is designed to provide only "approximately the same tax consequences" as if the decedent had accrued the income tax liability before his death. See Craven, Taxation of Income of Decedents, 102 U.Pa.L.Rev. 185, 191 (1953). We think that allowing it under both steps of the alternative tax computation in a way that is most advantageous to a taxpayer best gives effect to this purpose, and the text of the statute is consistent with this approach. Under step 1, a taxpayer will use the section 691(c) deduction to reduce his taxable income apart from long-term gain (*i.e.*, ordinary income) to zero; this is allowed by sections 63(a) and 691(c) combined. Under step 2, he will use the unused portion of the section 691(c) deduction to reduce his long-term gain; this is allowed by section 691(c).

Accordingly, defendant's motion for summary judgment is denied, plaintiffs' motion for summary judgment is granted, and judgment is entered for plaintiffs with the amount of recovery to be determined pursuant to Rule 47(c) (2).

5. If the decedent had paid income tax on the income before his death, his estate would have been smaller by the amount of the tax. The capital gain was almost $4 million, so the income tax would have been about $1 million. The total estate tax would have been smaller then, in the amount of the tax on $1 million (or perhaps on $500,000 because of the marital deduction). Under the installment sale provision in effect in 1951, the decedent could have expected this result—i. e., a tax on the income during his lifetime and an effective "deduction" from the gross estate—because death was considered as tantamount to a disposition of an installment obligation causing the income to be included in the return period ending with the date of death. Int.Rev.Code of 1939, § 44(d). The 1954 Code changed the installment sale rule to allow the decedent's beneficiaries to defer the income tax (without posting a bond to guarantee payment of the tax) until the payment of the installments. § 691(a) (4). However, the 1954 Code worked no substantive change. The legislative history cited above makes it clear that Congress simply intended to relieve beneficiaries of the burden of posting a bond. The section 691(c) deduction as it became applicable to installment sales (under the 1939 Code, its predecessor had applied to other items of income in respect of decedents) was intended to leave the estate-income tax treatment substantially the same as before.