**Robert F. GOODWIN et al.**
v.
**The UNITED STATES.**
No. 309–70.

United States Court of Claims.
April 14, 1972.

James A Lorentzen, Des Moines, Iowa, atty. of record, for plaintiffs. Roy M. Irish, Patterson, Lorentzen, Duffield, Timmons & Irish, Des Moines, Iowa, of counsel.

Ira Mark Bloom, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, COLLINS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## OPINION

COWEN, Chief Judge.*

Plaintiffs seek to recover federal income taxes collected for the calendar years 1964, 1965, and 1966, plus statutory interest. The suit arises as a result of defendant's determination that the deduction provided by section 691(c) of the Internal Revenue Code of 1954[1] is not allowable as a deduction from ordinary income, but may only be taken to reduce the amount included in gross income as income in respect of a decedent.

---

* This opinion contains all the essential findings of fact as stipulated by the parties.

1. All section references hereinafter are to the Internal Revenue Code of 1954.

Robert F. Goodwin, William A. Goodwin, Sara J. Goodwin, and Ann Witmer (hereinafter referred to as plaintiffs) [2] were the residuary beneficiaries under the will of W. J. Goodwin (hereinafter referred to as decedent). Before his death, decedent exchanged certain shares of stock for installment notes, and elected to report the resulting long-term capital gain on the installment basis. The balance owed on the notes was included in decedent's gross estate at his death, and an estate tax was reported thereon.

Decedent's estate initially acquired the notes under the terms of decedent's will, and during 1964, received installment payments consisting in part of long-term capital gain income in respect of the decedent. The estate filed a 1964 fiduciary income tax return on which it deducted the portion of the estate tax attributable to the inclusion of the right to such income in decedent's estate (hereinafter referred to as the section 691(c) deduction) from ordinary income. Defendant disallowed this treatment, but allowed the section 691(c) deduction as a deduction from the long-term capital gain income in respect of the decedent.

After 1964, the estate distributed the notes to plaintiffs, who in 1965 and 1966 received installment payments consisting in part of long-term capital gain income in respect of the decedent. Plaintiffs deducted the section 691(c) deduction from ordinary income on their returns for those years. Defendant also disallowed this treatment, but allowed the section 691(c) deduction as a deduction from the long-term capital gain income in respect of the decedent.

In timely fashion, the deficiencies resulting from defendant's disallowance of the section 691(c) deduction as a deduction from ordinary income were assessed, the assessments were paid by plaintiffs,[3] claims for refund were filed, statutory notice of the disallowance of each claim was waived, and the petition was filed herein.

The question concerning the proper application of the section 691(c) deduction first arose in Read v. United States, 320 F.2d 550 (5th Cir. 1963). In that case, the decedent's estate had $1,093,305.51 of capital gain income in respect of the decedent on which an estate tax of $184,996.51 had been paid. The estate also had $30,624.15 of ordinary income. When the estate filed its income tax return taking advantage of the alternative tax, it sought to compute the tax on the capital gain diminished by the section 691(c) deduction. It was defendant's position that the deduction could only be taken against ordinary income because there was no express provision making the deduction applicable against capital gain in computing the alternative tax.[4]

In holding for the taxpayer-estate, the Fifth Circuit relied upon the following discussion of the statutory purpose in Mertens:

"The purpose of Section 691(c) of the 1954 Code (formerly Section 126(c) of the 1939 Code), dealing with the 'deduction for estate tax' is to provide approximately the same tax consequences in the case of a decedent whose gross estate includes claims to income as in the case of a decedent all of whose income receivables had been collected (and income tax paid thereon) prior to his death. In the latter case, only the income in cash or its equivalent, net after the income tax

2. Sydney Burt Goodwin, the wife of Robert F. Goodwin, is a named plaintiff herein because she and her husband filed a joint return for 1966. John A. Witmer, the husband of Ann Witmer, is a named plaintiff herein because he and his wife filed a joint return for the years 1965 and 1966.

3. Plaintiffs paid the assessed deficiency against the estate because the assessment

was made after the estate was closed and the executors discharged.

4. The effect of this position on the part of defendant was to deny the taxpayer the benefit of the section 691(c) deduction to the extent that the deduction exceeded ordinary income.

paid thereon, would be included in the gross estate for estate tax purposes. But in the case of a decedent whose claims to income are included in his gross estate, except for the provisions of Section 691(c) of the Code, the gross amount of the claims would be subject to estate tax and also to income tax when later collected. In this situation, to avoid the imposition of both estate tax and income tax on the full amount of the income claims, Section 691(c) provides that the recipient of income in respect of a decedent may deduct that portion of the estate tax which is attributable to the inclusion of the right to such income in the decedent's estate." Mertens, Federal Income Tax § 12–102(b). [320 F.2d at 553.]

and reasoned that:

To adopt the Government's view would result in the imposition of both estate and income tax on the income amounts where the alternative computation was used. [*Ibid.*]

The same question came before us in Meissner v. United States, 364 F.2d 409, 176 Ct.Cl. 684 (1966). The plaintiffs therein first argued in support of their use of the section 691(c) deduction to offset capital gains that the purpose of section 691(c) was to avoid the imposition of both the estate tax and the income tax on the full amount of the income claims. Second, they made a textual argument that the section 691(c) deduction was allowable both against ordinary income in computing taxable income, and against capital gains in computing the amount subject to the alternative tax. Plaintiffs asserted that while section 161 stated: *"In computing taxable income under section 63(a),* there shall be allowed as deductions the items specified in [part VI of subchapter B, covering sections 161 to 187]" (*Emphasis added*), section 691(c), by contrast, simply provided that "[a] person who includes an amount in gross income under subsection (a) [covering items of income in respect of a

decedent] *shall be allowed,* for the taxable year, as a deduction [the amount of estate tax attributable to the item]" (*Emphasis added*). Since section 691 (c) was not in part VI of subchapter B, it was not expressly tied to the computation of taxable income. Also, section 63(a), which defined taxable income as "gross income, minus the deductions allowed by [chapter 1, covering section 691(c)]," did not expressly preclude the applicability of deductions for purposes other than computing taxable income.

Again, it was defendant's position that the deduction was allowable only against ordinary income because there was no provision in the Code allowing deductions from capital gain in applying the alternative tax. Defendant also argued that Congress intended the section 691(c) deduction to be allowable against ordinary income in order to minimize the burden of double taxation caused by imposing the estate tax on items which would also be subject to the income tax, and illustrated its argument as follows:

* * * Assume an estate has a $100 capital gain item and pays an estate tax of $40. As we read the statute, when the heir collects the $100 and uses the standard method [of computing his income tax liability] he will deduct 50 per cent of the gain under Section 1202 and $40 under Section 691(c), thereby paying a tax on only $10 of income. However, the plaintiffs would first reduce the $100 gain by the attributable estate tax of $40, deduct 50 per cent thereof and pay income tax on $30. Thus under plaintiffs' argument the taxpayer in this example would not get the benefit of the $40 in estate tax he paid but only $20. Indeed, if as plaintiffs argue, the deduction for estate tax is to be taken against the $100 of capital gain and not gross income generally, it is evident that any estate tax to the extent that it is computed at the rate of 51 per cent or more is wasted and gives the taxpayer no income tax ben-

efit. This hardly effecutates [sic] a legislative intent to minimize double taxation.

Similar results follow in the usual case from application of the taxpayers' arguments to the alternative tax computation. Assume the same $100 is includable in the gross estate, an estate tax of $40 is paid thereon, and the taxpayer receiving the item is in the 70 per cent income tax bracket. Pursuant to the Government's view of the law the taxpayer would deduct $40 from ordinary income and pay tax of $25 on the capital gain (25 per cent of $100). The effect of the $40 estate tax deduction from ordinary income would be to give the taxpayer a tax benefit of $28 (70 per cent of $40). Under the *Read* rationale, the taxpayer would pay a capital gains tax of 25 per cent on 60 ($100–$40) or $15, only $10 less than without the deduction. However, he would be required to pay the full tax on the ordinary income. Thus his total tax liability under the *Read* decision would exceed the tax computed under the Government's view by $18 (the $28 tax benefit which is lost less the $10 reduction of tax on the capital gain).

Thus it appears that taxpayers here and the court in *Read* attempt to give taxpayers maximum benefits in unusual situations at the expense of taxpayers generally. It is apparent that the detriment to taxpayers here and in *Read* flows from the absence of ordinary income and their use of the alternative tax method. But this can hardly be the case generally. [Defendant's Brief in *Meissner*, at pp. 14–15.]

It was in this context that we stated:

We are in substantial agreement with the *Read* case and would be content to say little more were it not for the fact that the defendant has forewarned us that such a decision for plaintiffs might prove to be deleterious to the majority of taxpayers having items of income in respect of a decedent. Also, since the facts established by affidavit suggest that there is ordinary income and these facts will be before one of our commissioners in the Rule 47(c) proceedings to determine the amount of recovery, we feel compelled to go further than the court in *Read* and explain how the section 691(c) deduction should operate where there is both ordinary income and capital gain. * * * If defendant is correct that the section 691(c) deduction must be applicable *either* to ordinary income *or* to capital gain and not both, it would seem that its interpretation of the congressional purpose would be the more reasonable.

We are of the view, however, that taxpayers are not limited to an "either-or" choice; we think that to carry out the purpose of section 691(c), a taxpayer should be able to use the deduction in the way most advantageous to him. Stated differently, he should be able to use it against ordinary income first and any balance against capital gain * * *. [364 F.2d at 412–413, 176 Ct.Cl. at 690–691.]

In effect, we accepted the position urged upon us by defendant, and concurred in by plaintiff's textual argument, that the section 691(c) deduction was allowable against ordinary income to the extent that there was such income. However, we followed the Fifth Circuit's decision in *Read* with respect to the excess of the section 691(c) deduction over ordinary income which resulted in no benefit to the taxpayer under defendant's construction of the statute in both *Read* and *Meissner*:

* * * As the *Read* case shows, Congress intended in section 691(c) "to provide *approximately the same* tax consequences in the case of a decedent whose gross estate includes claims to income as in the case of a decedent all of whose income receivables had been collected (and income tax paid thereon) prior to his death." (Emphasis added.) 320 F.2d, at 553. Unless plaintiffs are allowed to use their deduction against long-term gains, the tax consequences will in no

way approximate what would have happened if the decedent had paid tax on the income before his death * * *. [364 F.2d at 414, 176 Ct.Cl. at 692 (Footnote omitted).]

 Against this background, defendant states that it now agrees with the rationale of *Read*, and asks us to reconsider our holding in *Meissner* insofar as it allows the deduction of the estate tax attributable to an item of income in respect of a decedent from other unrelated income. Defendant's drastic change in position on section 691(c) is, of course, within its authority, but the sharp alteration in approach cautions us to be wary, and not to follow suit unless we are now convinced we were wrong. We are not so persuaded. As pointed out above, the words of the statute fit very well with the *Meissner* result, and, in case of doubt, it is preferable to follow the statutory language and leave changes up to Congress or possibly to a regulation giving precise content to section 691(c). Congress has not altered the law and the Internal Revenue Service has never issued an interpretative regulation.

The defendant insists, through a series of examples, that its new approach will always make the total amount paid in tax by the estate and the heirs closer to the tax the decedent would have had to pay if he had remained alive and collected all the installments. This may be so, but the Government's own examples show that the correspondence is unlikely to be precise and that some substantial discrepancy is probable even on the defendant's theory. For instance, the Government's calculation for this case shows that if Mr. Goodwin had remained alive his tax would have been $958,824, while under the *Meissner* rule the combined tax is $844,686 and under the defendant's proposed rule $974,695. Thus, defendant would have the plaintiffs pay substantially more than the decedent would have had to do. In other circumstances, dependent on the tax situation of the particular taxpayer, the discrepancies could be greater or lesser.

 As the *Read* case says, the purpose of section 691(c) is only to provide *"approximately* the same tax consequences" (Emphasis supplied), and we do not feel that the *Meissner* result destroys that purpose since it brings the two taxes into relatively close agreement without sacrificing or adding to the language of section 691(c), as the defendant's proposal does.

## CONCLUSION OF LAW

 Upon the foregoing opinion, which contains the essential findings of fact as stipulated by the parties, .the court concludes as a matter of law that plaintiffs are entitled to recover, and judgment is entered to that effect. The amount of recovery will be determined in subsequent proceedings under Rule 131(c).

