**Eleanor QUICK, an Individual, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. C–3892.**

United States District Court, D. Colorado.

June 21, 1973.

Shoemaker & Wham by W. J. Shoemaker and Edward J. Krisor, Jr., Denver, Colo., for plaintiff.

Stephen J. Swift, Trial Atty., Tax Div., Refund Trial Section No. 3, Dept. of Justice, Washington, D. C., for defendant.

### MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This suit for a tax refund is before us for decision upon a stipulated record. According to the stipulation of facts filed January 10, 1973, and to the pretrial order filed July 31, 1972, plaintiff was the recipient of certain of long-term capital gains from an installment sale of land made by her husband prior to his death. For each year of 1968, 1969, and 1970, she received capital gains from this source in the amount of $158,090. There is no question as to the treatment of this amount as long-term capital gains. Since the capital gains was "income in respect of a decedent" under § 691(a) of the Internal Revenue Code, plaintiff had to include these amounts in her gross income and pay income taxes thereon in the years received. But § 691(c) of the Code provides that when the taxpayer includes an amount of "income in respect of a decedent" under § 691(a) in her gross income, a deduction equal to that portion of the estate tax imposed upon

the decedent's estate attributable to the amount she receives "shall be allowed" to the taxpayer. In this case the estate tax related to the amount the taxpayer received as "income in respect of a decedent" was $20,506.84. So, each year that plaintiff was required to declare the income in respect of a decedent in the net amount of $158,090 under § 691 (a), she was also allowed the estate tax deduction under § 691(c) in the amount of $20,056.84.

Since the "income in respect of a decedent" was long-term capital gain, plaintiff was also allowed a capital gains deduction of 50% of the long-term capital gain when she computed her tax on the capital gain under the Code § 1202. But the § 691(c) estate tax deduction only says that it "shall be allowed." The question then arose, allowed from what?

The plaintiff's position was, and her position here is, that the § 691(c) estate tax deduction should be allowed from the sum of the net long-term capital gain (capital gain *after* the § 1202 50% capital gains deduction is taken) and ordinary income. Thus her computation in 1968, 1969, and 1970, was, in effect, as follows:

| | | |
|---|---|---|
| Net capital gain—"Income in respect of a decedent" | | $158,090.00 |
| Less § 1202 capital gains deduction (50% of $158,090) | $79,045.00 | |
| Less § 691(c) estate tax deduction | $20,506.84 | |
| Net taxable gain | | $ 58,538.16 |

Upon audit the government recomputed plaintiff's net taxable gain on this income. Its position was, and its position here is, that the § 691(c) estate tax deduction must be taken as an offset against the capital gain which was income in respect of the decedent *before* the capital gains deduction is taken. Accordingly, its computation was as follows.

| | | |
|---|---|---|
| Net capital gains—"Income in respect of a decedent" | | $158,090.00 |
| Less § 691(c) estate tax deduction | $20,506.84 | |
| Net capital gain | | $137,583.16 |
| Less § 1202 capital gains deduction (50% of $137,583.16) | $68,791.58 | |
| Net Taxable Gain | | $ 68,791.58 |

Using such a computation, the government determined deficiencies and interest to be due from plaintiff and timely assessed a total deficiency of $9,520.37 plus $1,171.13 interest. Plaintiff paid the deficiency claimed due and made a proper claim for refund. She did not pay the deficiency interest assessed against her however.

Plaintiff now sues to recover the deficiencies allegedly illegally exacted plus interest; the government counterclaims for the deficiency interest not paid. The question presented, as stipulated by the parties, is

[w]hether the deduction of estate tax provided by Section 691(c) of the Internal Revenue Code of 1954 should

be taken as an offset against the long-term capital gain representing income in respect of a decedent before deducting fifty per cent (50%) of its long-term capital gain (as provided by Section 1202 of the Internal Revenue Code of 1954), or whether the Section 691 (c) estate tax deduction should be taken against the sum of the net of long-term capital gain (after the fifty per cent (50%) Section 1202 deduction) and ordinary income.

There are three cases which have dealt with the § 691(c) estate tax deduction relating to capital gain in respect of a decedent. Two cases, Meissner v. United States, 364 F.2d 409, 176 Ct.Cl. 684 (1966), and Read v. United States, 320 F.2d 550 (5th Cir. 1963), involved the deduction where the § 1201 alternative tax method of computation was used. Under that method, the taxpayer, in effect, pays tax on ordinary income at ordinary income tax rates and on capital gains at the alternative tax rate of 25%. Thus, although these cases are helpful regarding statutory purpose and construction, since a different method of tax computation was used, they cannot be controlling here.

The third case is Goodwin v. United States, 458 F.2d 108, 198 Ct.Cl. 88 (1972). In Goodwin the taxpayers in question, the estate for 1964 and the beneficiaries for 1965 and 1966, received installment payments consisting in part of long-term capital gain which was income in respect of a decedent. Although the opinion in that case is unclear as to the method the taxpayers used in calculating taxable income, the stipulation of facts discloses that all of the taxpayers but one used the standard method, taking the § 1202 50% deduction for all long-term capital gains. The stipulation further discloses that those taxpayers took their § 691(c) deduction from "total income" after the § 1202 deduction was taken. Thus the question presented in Goodwin is identical with the question presented in the case before us.

The government in Goodwin disallowed the taxpayers' computation, contending, as they do here, that the § 691 (c) deduction could only be used to offset the particular capital gains which was income in respect of the decedent. Holding for the taxpayer, the Court of Claims decided that both statutory construction and legislative purpose was consistent with allowing the § 691(c) deduction to be taken against total income instead of requiring the deduction to be strictly associated with the type of income which gave rise to the deduction.

The holding in Goodwin was first based on the court's interpretation of the statutory language outlined in the earlier Meissner case. In essence, the interpretation was that since § 691(c) said only that the estate tax deduction "shall be allowed," the deduction was not necessarily required to be taken either against ordinary income or against capital gains representing income in respect of a decedent. Thus, in Meissner where the taxpayer had large capital gains–income in respect of a decedent, little of his own ordinary income, and chose to use the alternative tax method under § 1201, the court held that the taxpayer could take the estate tax deduction first against his own ordinary income and, second, if it was not used up, against capital gains–income in respect of a decedent.

Secondly, the court in Goodwin reasoned that allowing the § 691(c) deduction to be taken against ordinary income furthered the purpose of the deduction because it minimized the burden of double taxation caused by imposing the estate tax on items which would also be subject to the income tax. This general statutory purpose is more fully explained in Mertens as follows:

> The purpose of Section 691(c) of the 1954 Code (formerly Section 126 (c) of the 1939 Code), dealing with the 'deduction for estate tax' is to provide approximately the same tax consequences in the case of a decedent whose gross estate includes claims to income as in the case of a decedent all of whose income receivables had been collected (and income tax paid

thereon) prior to his death. In the latter case, only the income in cash or its equivalent, net after the income tax paid thereon, would be included in the gross estate for estate tax purposes. But in the case of a decedent whose claims to income are included in his gross estate, except for the provisions of Section 691(c) of the Code, the gross amount of the claims would be subject to estate tax and also to income tax when later collected. In this situation, to avoid the imposition of both estate tax and income tax on the full amount of the income claims, Section 691(c) provides that the recipient of income in respect of a decedent may deduct that portion of the estate tax which is attributable to the inclusion of the right to such income in the decedent's estate.

Mertens, Federal Income Tax § 12–102 (b) (1967).

The court in *Goodwin* at 110–111 appears to comment on this statutory purpose as applied to that case by quoting a hypothetical set out in the government's brief as the defendant in Meissner v. United States, *supra*:

\* \* \* Assume an estate has a $100 capital gain item and pays an estate tax of $40. As we read the statute, when the heir collects the $100 and uses the standard method [of computing his income tax liability] he will deduct 50 per cent of the gain under Section 1202 and $40 under Section 691(c), thereby paying a tax on only $10 of income. However, the plaintiffs would first reduce the $100 gain by the attributable estate tax of $40, deduct 50 per cent thereof and pay income tax on $30. Thus under plaintiffs' argument the taxpayer in this example would not get the benefit of the $40 in estate tax he paid but only $20. Indeed, if as plaintiffs argue, the deduction for estate tax is to be taken against the $100 of capital gain and not gross income generally, it is evident that any estate tax to the extent that it is computed at the rate of 51 per cent or more is wasted and

gives the taxpayer no income tax benefit. This hardly effecutates [sic] a legislative intent to minimize double taxation.

Ironically, now that the government is faced with the situation posed in their hypothetical, it wants to read the statute the opposite way. The government argues, as they did in *Goodwin*, that the § 691(c) deduction is supposed to work a "pro tanto cancelling out." That is, the deduction should be restricted to that type of income which gave rise to the right to the deduction. This argument came from the language of the earlier *Read* case, noted above. In *Read* the taxpayer had large capital gain which was income in respect of a decedent and little ordinary income. Using the § 1201 alternative tax method of computation, the taxpayer's deduction of the estate tax from the capital gain–income in respect of a decedent was allowed, in part because to restrict it to ordinary income would mean that most of the deduction would be wasted.

However, the courts in *Meissner* and *Goodwin* made clear that the concept of "pro tanto cancelling out" in *Read* was not intended to restrict the taxpayer in determining from what type of income the estate tax deduction could be taken. Thus, the deduction was allowed to be taken from both ordinary income and against capital gains income in respect of a decedent where the § 1201 alternative tax method was used in *Meissner*, and the deduction was allowed to be taken from total income where the standard tax method and the § 1202 50% capital gains deduction was used in *Goodwin*.

The government nevertheless contends that *Goodwin* should not be dispositive here because it is written in terms of the availability of the § 691(c) deduction against ordinary income only and does not expressly get to the use of the balance of the § 691(c) deduction against capital gains. While the facts set out in the opinion talk in terms of the taxpayers' use of the § 691(c) deduction against "ordinary income," the stipulation discloses that the § 691(c) deduc-

tion was taken from "total income" which included capital gains as well as ordinary income. In some instances the ordinary income of the taxpayer was less than the § 691(c) deduction; thus the balance of the deduction was, in effect, applied to capital gains. Moreover, as in the present case, the § 691(c) deduction was taken *after* the § 1202 capital gains deduction. This method of tax computation in *Goodwin* was directly approved by the Court of Claims. Accordingly, we see no substance to the government's attempted distinction.

Since the method of tax computation used in *Goodwin* is identical with the method used in the case before us, and since we agree with both the reasoning and result reached in that case, we hold that the method of tax computation used by plaintiff was correct and that she is entitled to recover.

Pursuant to the January 10, 1973, stipulation, the parties will, within thirty days, agree on the form of judgment to be entered pursuant to this decision.