**Eleanor QUICK, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 73-1827.**

United States Court of Appeals, Tenth Circuit.

Argued July 8, 1974.

Decided Sept. 16, 1974.

---

Jonathan S. Cohen, Atty. Tax Div., U. S. Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins and Carolyn R. Just, Attys., Washington, D. C., of counsel), for appellant.

Edward J. Krisor, Jr., Denver, Colo. (Shoemaker & Wham, Denver, Colo., and W. J. Shoemaker, Denver, Colo., of counsel), for appellee.

Before LEWIS, Chief Judge, and MOORE [1] and DOYLE, Circuit Judges.

MOORE, Circuit Judge:

This suit for a tax refund was submitted to the trial court for decision upon a joint stipulation of facts and uncontroverted facts in a pre-trial order. Pertinent to decision are the following:

Prior to his death, plaintiff's husband, Edmund T. Quick (the decedent) had contracted to sell 640 acres of land for $1,100,000 on an installment basis with the proviso that the seller would convey to the purchaser one acre for each $2,000 paid annually. The balance remaining to be paid on the date of decedent's death was $1,060,000, an amount which was included in his estate.

During each of the years in question, 1968, 1969 and 1970, plaintiff received as income in respect of a decedent, the sum of $160,000, pursuant to the sales contract which, because of a cost basis of $1,910, she reported as a net long-term capital gain of $158,090 on her annual tax returns. Plaintiff then, pursuant to Section 1202 of the Internal Revenue Code of 1954, took advantage of the 50% capital gains deduction provided for therein, thus reducing capital gains to $79,045. In addition, she deducted

the estate tax deduction allowed by Section 691(c) of the Code in the amount of $20,506.84 (as to which amount there is no dispute) from the $79,045, and reported the balance of $58,538.16 as a net taxable gain for each of the tax years in question.

Upon audit the government accepting the same figures rearranged them slightly by deducting the estate tax allowance of $20,506.84 from the entire net capital gain of $158,090 before applying the 50% deduction thereto. The mathematics of this approach resulted in a net gain less the estate tax deduction of $137,583.16 ($158,090 less $20,506.84). Applying the 50% deduction thereto produced a net taxable gain of $68,791.58 instead of 58,538.16, thus accounting for the deficiencies claimed by the government as follows:

| Year | Tax Deficiency | Interest |
|------|----------------|----------|
| 1968 | $5,726.94 | $ 868.43 |
| 1969 | $3,138.84 | $ 283.01 |
| 1970 | $ 654.59 | $ 19.69 |
| | $9,520.37 | $1,171.13 |

Plaintiff paid the asserted deficiencies (but not the interest), her claims for refund were disallowed and this suit followed. The only question before us is: which method is proper, namely, deduction of the estate tax allowance before applying the 50% capital gains deduction (the government's theory) or after the deduction (plaintiff's theory).

The District Court in approving plaintiff's method of calculation relied chiefly upon a rather recent decision in the Court of Claims, Goodwin v. United States, 458 F.2d 108, 198 Ct.Cl. 88 (1972) wherein an almost identical tax situation was presented. There, as here, the taxpayers received installment payments consisting of long-term capital gains which was income in respect of a decedent. There, again as here, the taxpayers deducted their estate tax allow-

1. Honorable Leonard P. Moore, Senior Judge, United States Court of Appeals, Second Circuit, New York, New York, sitting by designation.

ance *after* the 50% (section 1202) capital gains deduction had been made.

In the District Court, the parties stipulated the issue as follows:

> Whether the deduction of estate tax provided by Section 691(c) of the Internal Revenue Code of 1954 should be taken as an offset against the long-term capital gain representing income in respect of a decedent before deducting fifty percent (50%) of the long-term capital gain (as provided by Section 1202 of the Internal Revenue Code of 1954) or whether the Section 691(c) estate tax deduction should be taken against the sum of the net of long-term capital gain (after the fifty percent (50%) Section 1202 deduction) and ordinary income. Pre-Trial Order.

Decisional authority as a guide to the resolution of the problem appears to be limited to three cases, two of which preceded *Goodwin, supra,* namely, Read v. United States, 320 F.2d 550 (5th Cir. 1963) and Meissner v. United States, 364 F.2d 409, 176 Ct.Cl. 684 (1966).

In *Read,* there was substantial capital gains income in contrast to little ordinary income. The decision that the taxpayer was not restricted to taking the deduction against ordinary income was a recognition of the principle that the taxpayer should be allowed to have the full benefit of the deduction. Likewise, in *Meissner,* also factually similar to *Read,* the court permitted the taxpayer to make full use of the deduction, stating explicitly that "a taxpayer should be able to ' use the deduction in the way most advantageous to him." *Meissner,* at 413.

*Goodwin,* also before the Court of Claims, finally presented a state of facts similar to the *Quick* situation. The taxpayers (except one) there, as here, took their 50% capital gains deduction first and then deducted the estate tax allowance. The Court of Claims supported the taxpayers' position.

As the District Court pointed out, although the statute reads that the estate tax deduction "shall be allowed," it does not specifically state "from what." However, the very omission of a "from what" specification is a sufficient basis for the courts to fill in a purpose. This the courts did in both *Meissner* and *Goodwin* by holding that the method most advantageous to the taxpayer was proper. Here the estate tax deduction was roughly $20,000. The government had already received its tax share from the decedent's tax obligations. The law (section 1202) cut the capital gains in half before taxes. It did not cut the deduction in half. Yet if the deduction had to be taken before the cut, the net effect would have been to reduce the allowance from $20,000 to $10,000. Therefore, if any meaning is to be given to the "most advantageous" principle, it should be applied here. The income against which it is being applied is the statutory income, i. e., 50%.

Judgment affirmed.