UNITED CALIFORNIA BANK and Lillian Disney Truyens, Co-Executors of the Estates of Walter E. Disney, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 75–1616.

United States Court of Appeals, Ninth Circuit.

Oct. 19, 1977.

Mason C. Lewis, Asst. U. S. Atty., Los Angeles, Cal., Dennis M. Donohue, argued, Appellate Section, Tax Division, Washington, D. C., for defendant-appellant.

Marc R. Isaacson, argued, Los Angeles, Cal., for plaintiffs-appellees.

Before WALLACE, SNEED and KENNEDY, Circuit Judges.

SNEED, Circuit Judge:

The estate of Walter E. Disney (taxpayer) instituted a suit in district court for the refund of certain taxes assessed against it for the years 1967 and 1968. The district court held in favor of the taxpayer, and the United States appeals therefrom. We reverse.

## I.

### FACTS.

The parties stipulated to the following facts. Disney, by his will, left 45% of the residue of his estate to certain charitable organizations. During 1967 and 1968, appellees, United California Bank and Lillian Disney Truyens, co-executors of the estate, sold certain securities included in the resi-

due of the estate, on which sales net long-term capital gains of $500,622.38 and $1,058,018.43 were realized in 1967 and 1968 respectively. In 1967, a net short-term capital gain of $16,944.16 also was realized. Pursuant to the terms of the will, appellees set aside 45% of these net long-term capital gains to the charitable organizations.

Appellees computed the taxpayer's income tax for the years 1967 and 1968 under the alternative tax described in I.R.C. § 1201(b).[1] In computing the tax, appellees deducted the 45% of the net long-term capital gain which had been permanently set aside for charitable purposes from the total net long-term capital gain, which is taxed at a flat rate of 25%.

Appellant United States, through the District Director of Internal Revenue, Los Angeles, California, disallowed this deduction. Without the deduction, the alternative tax was higher than the normal tax, so appellant computed the taxpayer's tax under the normal method and assessed deficiencies in the amounts of $4,998.93 for 1967 and $27,445.05 for 1968, plus interest of $1,099.76 and $4,386.41 for the respective years. Appellees paid these deficiencies and filed their complaint for a refund.

## II.

### THE CONTROVERSY.

While there are several ways in which the issue before us can be framed our formulation is whether that portion of the net long-term capital gain which is required to be set aside permanently for a charitable organization can be deducted from the net long-term capital gain in calculating the alternative tax under section 1201(b) when to do so is advantageous to the taxpayer.

1. The version of Section 1201(b) in effect at that time provides:

Other taxpayers.—If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, then, in lieu of the tax imposed by sections 1 and 511, there is hereby imposed a tax (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—

(1) a partial tax computed on the taxable income reduced by an amount equal to 50 percent of such excess, at the rate and in the manner as if this subsection had not been enacted, and

(2) an amount equal to 25 percent of the excess of the net long-term capital gain over the net short-term capital loss.

The district court, relying on the Second Circuit decision in *Statler Trust v. Commissioner of Internal Revenue*, 361 F.2d 128 (2d Cir. 1966), held in the affirmative. The Government, although recognizing that *Statler Trust* is on point, contends that *Statler Trust* was wrongly decided. We agree with the Government.

The conflict between the Government and the taxpayer can be understood better if we set forth calculations derived from a hypothetical situation which reflect the competing views. Assume an estate in which in the taxable year 1967 one-half of the net long-term capital gains by the terms of the governing instrument is permanently set aside for charity. Assume further that in 1967 the estate realized and recognized $50,000 in ordinary income and $500,000 consisting of net long-term capital gains. Both the taxpayer estate and the Government agree that the taxable income of this hypothetical trust would amount to $175,000 calculated in the following manner:

| | | |
|---|---|---|
| Gross Income | | $550,000 |
| Less: Sec. 1202 deduction [2] | $250,000 | |
| Sec. 642(c) deduction [3] | $125,000 | |
| Total Deductions | $375,000 | |
| Estate Taxable Income | | $175,000 |

Assuming an effective rate of 60% the normal tax would amount to $105,000.

In computing the alternative tax the Government proceeds as follows:

| | |
|---|---|
| Estate Taxable Income | $175,000 |
| Less: 50% of excess of net long-term capital gain over net short-term capital loss.[4] | $250,000 |
| Partial Taxable Income | –0– |
| Partial Tax | –0– |
| Tax on Excess of Net Long-Term Capital Gain Over Net Short-Term Capital Loss (25% of $500,000) | $125,000 |

Inasmuch as the alternative tax so computed is greater than the normal tax of $105,-000, the latter is the proper tax as the Government sees it.

2. I.R.C. § 1202 authorizes a deduction by a taxpayer other than a corporation of 50 percent of the excess net long-term capital gain over net short-term capital loss in computing taxable income.

3. I.R.C. § 642(c). The operation of this section requires a bit of explaining. It authorizes a deduction by an estate or trust for "any amount of gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside" for charity. This suggests the deduction should be $250,000; however, this would permit a charitable deduction *and* a section 1202 deduction which would eliminate the entire amount of net long-term capital gain from taxable income although only one-half of it was permanently set aside for charity. This result is foreclosed by the provision in section 642(c) which requires that "proper adjustment of the deduction otherwise allowable . . . shall be made for any deduction allowable to the estate or trust under section 1202 . ." Treas.Reg. § 1.642(c)–3 (1960). *See* M. C. Ferguson, J. Freeland, & R. Stephens, *Federal Income Taxation of Estates and Beneficiaries* 372–73 (1970). That portion of the gain set aside for charity ($250,000) is reduced by that portion of it ($125,000 or one-half of the total) already deducted by reason of section 1202. The balance, $125,000, constitutes the section 642(c) deduction.

4. I.R.C. § 1201(b)(1).

The taxpayer, troubled by the "wastage" of the excess ($75,000) of the $250,000 deduction over the estate's taxable income of $175,000, computes the alternative tax in a manner that eliminates the "wastage." Its method is as follows:

| | |
|---|---:|
| Estate Taxable Income | $175,000 |
| Less: 50% of that portion of the excess of net long-term capital gain over net short-term capital loss *not permanently set aside for charity.* ($250,000) | $125,000 |
| Partial Taxable Income | $ 50,000 |
| Partial Tax (assume 60% effective rate) | $ 30,000 |
| Tax on Excess of Net Long-Term Capital Gain Over Net Short-Term Capital Loss *Not Permanently Set Aside For Charity.* (25% of $250,000) | $ 62,500 |
| Total Alternative Tax | $ 92,500 |

By eliminating the "wastage" the alternative tax is less than the normal tax and thus is the amount owed by the taxpayer estate. The actual figures involved in this case are different, although within the same range of magnitude of those above.[5]

## III.

## THE RELEVANT STRUCTURE OF THE CODE.

The Code could be drafted in a manner that would conform to the taxpayer's

---

5. For example, using the rounded-off figures for 1967, the competing methods show the following calculations.

**Normal Tax**

| | | |
|---|---:|---:|
| Gross Income | | $595,000 |
| Less: § 1202 deduction | $250,000 | |
| § 642(c) deduction | $145,000 | |
| Other deductions | $ 54,000 | |
| | $449,000 | |
| Estate Taxable Income | | $146,000 |
| Tax (regular rates) | | $ 88,000 |

**Alternative Tax**

(1) Taxpayer's Method.

| | |
|---|---:|
| Estate Taxable Income | $146,000 |
| Less: 50% of that portion of the excess of net long-term capital gain over net short-term capital loss not permanently set aside for charity | $137,500 |
| Partial Taxable Income | $ 8,500 |
| Tax (normal rates) | $ 1,800 |
| Tax on Excess of Net Long-Term Capital Gain Over Net Short-Term Capital Loss Not Permanently Set Aside For Charity (25% of $275,000) | $ 69,000 |
| Total Alternative Tax | $ 70,800 |

(2) Government's Method

| | |
|---|---:|
| Estate Taxable Income | $146,000 |
| Less: 50% of excess of net long-term capital gain over net short-term capital loss | $250,000 |
| Partial Taxable Income | —0— |
| Partial Tax | —0— |
| Tax on Excess of Net Long-Term Capital Gain Over Net Short-Term Capital Loss (25% of $500,000) | $125,000 |
| Total Alternative Tax | $125,000 |

wishes. Unfortunately, it is not so written. To conform to the taxpayer's understanding the applicable provisions of the Code should reflect a consistent pattern of treating sums distributed to, or permanently set aside for, charity as amounts substantially insulated from other transactions affecting the taxable status of the estate or trust or its beneficiaries occurring during the relevant taxable period. In short, "conduit" treatment of such sums should emerge boldly from the Code's language. It does not.

To begin with, "conduit" treatment would suggest that amounts distributed or set aside for charity would be *excluded* from the distributable net income of the estate or trust as described in section 643 and, in determining the amount includible in the gross income of an estate or trust beneficiary, section 662 would allocate only an amount reduced by such distributions or set asides. Correspondingly, no portion of such distribution or set asides directly would be allocable to items distributable to non-charitable beneficiaries. Finally, there would be no *deduction* for amounts paid or permanently set aside for charity in computing the taxable income of the estate or trust; such amounts would simply be *excluded* from the gross income of the estate or trust.

The present Code proceeds differently. Amounts distributed or set aside to charity are not excluded from the computation of distributable net income pursuant to section 643. Even when such amounts consist of capital gains they remain in distributable net income. I.R.C. § 643(a)(3). Amounts includible in the income of non-charitable estate or trust beneficiaries are limited to distributable net income which is arrived at after allowance of an unlimited *deduction* for charitable distributions or set asides. I.R.C. § 662(a), § 642(c). This deduction is "allocated among the items of distributable net income" (I.R.C. § 662(b) 3rd sentence) which items, in the hands of non-charitable distributees, retain the same character they had in the hands of the estate or trust. I.R.C. § 662(b); Treas.Reg. § 1.662(b)–2 (1960).

More directly to the point of this case, a "conduit" approach with respect to charitable distributions and set asides would involve a different method of calculating the normal tax than that which both the taxpayer and government agree is proper. To illustrate, return to the foregoing example. A "conduit" approach would result in the following normal tax computation:

| | |
|---|---:|
| Gross Income as Adjusted | $300,000 |
| (Receipts of $550,000 Reduced by Amount Set Aside to Charity $250,000) | |
| Less: Section 1202 deduction (50% of that portion of the excess of net long-term capital gain over net short-term capital loss *not permanently set aside for charity*.) | $125,000 |
| Estate Taxable Income | $175,000 [6] |

Assuming an effective rate of 60%, the normal tax is the same as under the proper computation method. The difference, however, is that it is clear that section 1202 and

6. Even if the set aside or distribution to charity remains in the gross income of the estate a computation method more in keeping with the taxpayer's would be as follows:

| | | |
|---|---:|---:|
| Gross Income | | $550,000 |
| Less: Amount Set Aside to Charity | $250,000 | |
| Section 1202 Deduction | $125,000 | |
| Total Deduction | | $375,000 |
| Estate Taxable Income | | $175,000 |

Neither method of computing the normal tax is employed. The proper method is that set forth on p. 2391, *supra*.

642(c) do not countenance a "conduit" approach in calculating the normal tax. To the extent that further proof of the Code's rejection of this approach in the present context is required, it is supplied by the second sentence of section 1202.[7] This sentence *permits* the exclusion of capital gains which under sections 652 and 662 are includible in the gross income of income beneficiaries of estates or trusts as gain derived from the sale or exchange of capital assets. No mention is made of excluding capital gains distributed to or set aside for charity. Consistent application of the conduit approach would require such a provision.

Confronted with these numerous inconsistencies between the taxpayer's conduit theory and the structural characteristics of the applicable portions of the Code we believe the proper course is to follow closely the Code's precise language. Being so guided we are less likely to disturb a carefully constructed balance among intricately designed sections which to us may be in part both unseen and unknown. Being so guided we interpret section 1201(b), which describes the method by which the alternative tax is to be computed, precisely as it is written.[8] The excess of the net long-term capital gain over the net short-term capital loss for the purpose of this section is required to be computed without reduction for any amount distributed to or set aside for charity. No such reduction is authorized any more than is a similar reduction under section 1202.

## IV.

### THE RELEVANT AUTHORITIES.

Taxpayer, in addition to *Statler Trust,* relies heavily on cases which have permitted the deduction under section 691(c) for estate taxes properly allocable to income in respect of a decedent against long-term capital gains in computing the alternative tax. *Meissner v. United States,* 364 F.2d 409, 176 Ct.Cl. 684 (1966); *Read v. United States,* 320 F.2d 550 (5th Cir. 1963); *Sidles v. Commissioner of Internal Revenue,* 65 T.C. 873 (1976).[9] We express no opinion with respect to the correctness of these decisions. They are, in any event, inapposite to the issue before us.

It is true, of course, that these decisions adopt an approach that precludes the "wastage" of section 691(c) deductions in computing the alternative tax on capital gains and that the taxpayer here also seeks to avoid the "wastage" of a deduction in the same computation. The similarity between *Meissner, Read,* and *Sidles* and this case ends at that point, however. The charitable contribution deduction in Subchapter J dealing with the taxation of estates and trusts is carefully integrated into a very complex statutory pattern which, as already indicated, reflects a design inconsistent with the philosophy of the taxpayer's case. No such intricate fashioning appears with respect to the section 691(c) deduction. This section merely provides for a deduction for estate tax attributable to amounts regarded as income in respect of a decedent. It does not specify the manner in which the deduction is to be utilized. Moreover, the avoidance of complete double taxation under the estate and income tax of items of income in respect of a decedent, which is the purpose of the section 691(c) deduction, provides a forceful reason for permitting the utilization of the deduction in computing the alternative tax.

7. This sentence reads:

   In the case of an estate or trust, the deduction shall be computed by excluding the portion (if any), of the gains for the taxable year from sales or exchanges of capital assets, which, under sections 652 and 662 (relating to inclusions of amounts in gross income of beneficiaries of trusts), is includible by the income beneficiaries as gain derived from the sale or exchange of capital assets.

8. Footnote 1, *supra. See Weil v. Commissioner of Internal Revenue,* 229 F.2d 593 (6th Cir. 1956).

9. *See also Quick v. United States,* 503 F.2d 100 (10th Cir. 1974); *Goodwin v. United States,* 458 F.2d 108, 198 Ct.Cl. 88 (1972).

This reason is not applicable in the case before us. In holding as we do we do not subject capital gains to double taxation nor do we eliminate the effectiveness of the charitable contribution deduction for estates and trusts. While we do preclude the reduction of the flat tax on capital gains in calculating the alternative tax by refusing to permit the capital gains to be reduced by amounts paid or permanently set aside to charity, we do so in accordance with both the letter and the spirit of the applicable provisions of the Code. In this respect we cannot improve on the words of Judge Dooling who, in his dissent in *Statler Trust,* said, "The statute's effect is too plain to be supposed an inadvertent one, and it is far from being ungenerous. The alternatives are payment of the tax at ordinary rates on half the capital gain less the adjusted deduction for the part of it paid to charity or paying a tax on that same income amount equal to a quarter of the total capital gain." 361 F.2d at 133.[10] Essentially the same approach was taken in *Weil v. Commissioner of Internal Revenue,* 229 F.2d 593 (6th Cir. 1956).

We, therefore, do not agree with the court in *Statler Trust* where, speaking through Judge Friendly, it characterized the Government's interpretation as both "unfair" and "unintended." *Id.* at 131. It is, in fact, neither. The court's reliance on section 643(a)(3)'s inclusion of charitable payments and set asides from capital gains in distributable net income to evidence a pervasive reliance on a conduit principle for such charitable provisions is misplaced. Section 643(a)(3), as already indicated, is part of a structure which in its entirety unmistakably rejects the conduit principle for charitable payments and set asides. Its specific purpose is to retain capital gains so paid or set aside in distributable net income so as to permit the allocation of the benefits of the deduction among items of distributable net income in accordance with section

662(b) and the regulations thereunder. Treas.Reg. § 1.643(a)–5(b) (1960); § 1.662(b)–2 (1960).

We are aware, of course, that any computation that reduces taxes on taxable beneficiaries because of charitable payments or set asides is directly advantageous to such beneficiaries and indirectly helpful to charities generally. While such a consideration in an exquisitely balanced situation might be controlling, the case before us is not such a situation. To permit such concerns to control here is contrary to the statute as written.

We therefore reverse and direct that the taxes for the years 1967 and 1968 be computed as the Government insists. The refunds sought are denied.

REVERSED.

---

10. The present section 1201 imposes a heavier burden on the taxpayer than that described by Judge Dooling. I.R.C. § 1201(b). His point remains valid, however. The extent of the burden is prescribed by Congress; it should not be reduced by means not described by Congress. Its increasing complexity and specificity set it apart from the section 691(c) deduction.